IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANDREW WILLIAM SMITH & LISA VELTEN-SMITH,**<br><br>**On Behalf of Themselves and All Others Similarly Situated,**<br><br>    Plaintiffs,<br><br>  v.<br><br>**WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A. And Does 1 through 20,**<br><br>    Defendants. | Civil Action No. 1:08 cv-00564 (LAK) |

## MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS

WELLS FARGO & COMPANY,
WELLS FARGO BANK, N.A.

Of Counsel:

Thomas M. Hefferon
Marva R. Deskins
GOODWIN PROCTER, LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 346-4000 (telephone)
(202) 344-4444 (facsimile)
thefferon@goodwinprocter.com

Brian D. Hail (BH – 1857)
GOODWIN PROCTER, LLP
599 Lexington Avenue,
New York, NY 10022
(212) 813-8800 (telephone)
(212) 355-3333(facsimile)
bhail@goodwinprocter.com

# TABLE OF CONTENTS

**Page**

ALLEGATIONS OF THE COMPLAINT......................................................3

ARGUMENT.................................................................................4

   I.   THE SECOND AND THIRD CAUSES OF ACTION
       ARE BARRED BY FEDERAL BANKING PREEMPTION ..........................4

       A.  The Preemption Authority of the National Bank Act ..................................4

       B.  The State Law Claims Are Preempted By the NBA and
           OCC Regulation.........................................................................7

  II.  THE SECOND CAUSE OF ACTION IS OTHERWISE
       DEFICIENT................................................................................10

       A.  Plaintiffs Do Not Have a Private Right of Action
           Under the Escrow Statute.............................................................10

CONCLUSION.............................................................................12

## TABLE OF AUTHORITIES

**CASES:**                                                                          **Page**

*Austin v. Provident Bank*, 2005 WL 1785285 (N.D. Miss. July 26, 2005) .........................8

*Bank of America v. City and County of San Francisco*, 309 F.3d 551 (9th Cir. 2002) ........................................................................................................ 5-6, 8

*Bank of America, N.A. v. Sorrell*, 248 F. Supp. 2d 1196 (N.D. Ga. 2002) .........................9

*Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996)............................5, 6

*Cipolone v. Liggett Group, Inc.,* 505 U.S. 504 (1992) .........................................................4

*Clearinghouse Ass'n, L.L.C. v. Cuomo*, 510 F.3d 105 (2d Cir. 2007)........................ 5, 6-7

*Davis v. Elmira Sav. Bank*, 161 U.S. 275 (1896)..................................................................6

*Farmers' & Mechs.' Nat'l Bank v. Dearing*, 91 U.S. 29 (1875) ..........................................5

*Kane v. Marine Midland Bank, N.A.*, 446 N.Y.S. 2d 873, 875 (N.Y. Sup. Ct. 1982) .........................................................................................................................12

*Kramer v. Time Warner Inc.,* 937 F.2d 767 (2d Cir. 1991) ..................................................4

*Martinez v. Wells Fargo Bank, N.A.,* 2007 WL 2213216 (N.D. Cal. July 31, 2007) ......2, 9

*McCullough v. Maryland*, 17 U.S. 316 (1819) .....................................................................4

*Montgomery v. Bank of America Corp.*, 515 F. Supp. 2d 1106 (C.D. Cal. 2007)...............9

*NationsBank of N.C. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251 (1995)....................6

*Ricciuti v. New York City Transit Authority,* 1991 WL 221110 (S.D.N.Y., Oct. 3, 1991) .........................................................................................................................3

*Talbott v. Silver Bow County*, 139 U.S. 438 (1891) ............................................................5

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) .......................11, 12

*Watters v. Wachovia Bank, N.A.,* --U.S.--, 127 S. Ct. 1559 (2007)....................................6

*Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949 (9th Cir. 2005)................................... 4-5

*Wells Fargo Bank, N.A. v. BrooksAmerica Mortgage Corp.* 419 F.3d 107 (2d Cir. 2005) ...................................................................................................................4

*Wells Fargo Bank of Texas N.A. v. James*, 321 F.3d 488 (5th Cir. 2003) .........................9

*World Trade Center Properties, LLC v. Hartford Fire Ins. Co.,* 345 F.3d 154 (2d Cir.2003) .................................................................................................................4


Constitutions:

U.S. Const., art. VI, cl.2 ...................................................................................................4


Statutes:

National Bank Act of 1864, 12 U.S.C. §§ 21 et seq. ........................................................2
12 U.S.C. § 24 (Seventh) ..........................................................................................5, 6, 8
    12 U.S.C. § 371(a) ....................................................................................................6

12 U.S.C. §1 ....................................................................................................................6

General Business Law § 349 et seq. ...................................................................2, 3, 8, 12

Real Property Tax Law § 952 et seq. .................................................................2, 3, 8, 12
Real Property Tax Law § 953(4) ..................................................................3,10, 11, 12
    Real Property Tax Law § 956(1) .............................................................................10
    Real Property Tax Law § 957(1) ........................................................................10, 11
    Real Property Tax Law § 957(2) .............................................................................11
    Real Property Tax Law § 957(3) .............................................................................11


**RULES AND REGULATIONS:**

12 C.F.R. § 7.4002(a) .....................................................................................................2, 8

12 C.F.R. § 7.4002(b)(2) ....................................................................................................8

12 C.F.R. § 7.4002(d) .........................................................................................................9

12 C.F.R. § 34.4 ........................................................................................................7, 8, 9

12 C.F.R. § 34.4(4) ............................................................................................................8

68 Fed. Reg. 46,264 (Aug. 5, 2003) ..................................................................................7

69 Fed. Reg. 1904 (Jan. 13, 2004) ..................................................................................7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANDREW WILLIAM SMITH & LISA VELTEN-SMITH,**<br><br>**On Behalf of Themselves and All Others Similarly Situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A. And Does 1 through 20,**<br><br>Defendants. | Civil Action No. 1:08 cv-00564 (LAK) |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PARTIAL MOTION TO DISMISS</u>

Two of the three counts of the Complaint are state-law causes of action which are preempted by federal banking law.  One of the two also is barred because the statute does not provide a private right of action.  The Court should dismiss the "Second Cause of Action" and the "Third Causes of Action," with prejudice.

In this case, Plaintiffs Andrew and Lisa Velten-Smith ("Smiths") contend that Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo") charged them an impermissible "tax service fee" at the time they obtained a loan from Wells Fargo Bank, N.A. to purchase a cooperative apartment.[1]  They allege the fee was improper because its purpose was to set up a tax escrow account, which is allegedly

---

[1]    Wells Fargo Bank, N.A. is a subsidiary of Wells Fargo & Company (Complaint, ¶ 5), and it actually made the loan to the Smiths. *Id.*, ¶ 6.

unnecessary since the coop building board (not the Smiths) pays the taxes. *Class Action Complaint for Damages and Injunctive Relief*, ¶¶ 11, 14 ("*Complaint*"). As explained orally at the initial pretrial conference, however, the tax service fee is not charged for that reason at all.[2] Wells Fargo makes this Motion because, no matter the purpose of the tax service fee, the Smiths' two state law claims concerning the fee must be dismissed. Those claims are alleged to arise under New York State Real Property Tax Law § 952 *et seq.* ("Escrow Statute"), and New York State General Business Law § 349 *et seq.*

Each cause of action is subject to dismissal as preempted by the National Bank Act of 1864, 12 U.S.C. §§ 21 *et seq.* ("NBA"), and corresponding regulations of the Office of Comptroller of the Currency ("OCC"). Under the NBA, Wells Fargo, a national bank, has all "incidental powers" to make real estate loans free from state interference. More specifically, an OCC regulation codified at 12 CFR §7.4002(a) explicitly permits a national bank to charge non-interest fees which it, in its discretion, may choose to impose. Independently and together, these provisions of federal law prohibit the Smiths from invoking state law to prohibit or to regulate non-interest fees such as the "tax service fee" at issue here. *Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 2213216, *1 (N.D. Cal. July 31, 2007)(dismissing as preempted state law claims that Wells Fargo improperly charged tax service fees and underwriting fees).

Separately, the "Second Cause of Action," under the Escrow Statute, is barred because that law does not provide the Smiths with a private cause of action for the

---

[2] Rather, the tax service fee is charged so as to hire an entity to check on whether those taxes are being paid. At the Court's suggestion, Defendants are gathering documents to provide to the Smiths to help them understand their mistaken impression. Of course, those facts are not yet before the Court in this posture, where the Complaint is assumed true.

conduct alleged in the Complaint. The Smiths' apparent theory is that Wells Fargo violated Real Property Tax Law § 953(4), which prohibits certain charges for the creation and maintenance of a tax escrow account in connection with certain home mortgages. But, the New York legislature provided only that the Attorney General has authority to seek a remedy for that type of alleged violation of the Escrow Statute. The Smiths may not sue here under the Escrow Statute.

Accordingly, Plaintiffs claims under the Real Property Tax Law § 952 *et seq.*, and the General Business Law § 349 *et seq.* should be dismissed with prejudice.

## ALLEGATIONS OF THE COMPLAINT[3]

Taking the Complaint as true for these purposes, the Smiths' allegations are straightforward. On November 13, 2007, the Smiths obtained a mortgage loan from Wells Fargo for the purchase of a cooperative apartment in Manhattan. *Complaint* ¶4. They allege they were charged a "tax service fee" of eighty ($80.00) dollars. *Id*.

According to the Complaint, the tax service fee is "for the cost to contact the taxing authority, create the tax escrow, and insure timely payment of applicable taxes." *Complaint*, ¶11. In cooperative unit buildings, Plaintiffs allege, the unit owners pay a monthly maintenance fee to the Cooperative Corporation, and the Corporation pays property taxes on the building using those fees. *Id*., ¶14. Therefore, the Smiths reason,

---

[3]    As Defendants are making a partial motion to dismiss, they are under no obligation to answer the remaining allegations in the complaint. *Ricciuti v. New York City Transit Authority*, 1991 WL 221110, *2 (S.D.N.Y., Oct. 3, 1991) ("*Any* motion, particularly when the motion addresses a significant portion of the complaint . . ., will suspend the time to answer any claim. As a matter of policy and judicial economy such a conclusion is required.") (emphasis in original). If and to the extent an answer would be required to the First Cause of Action, Defendants deny the factual allegations contained therein – in particular, the allegation that no service was arranged for or provided for the tax service fee – and deny all liability.

3

they should not have been charged a fee for an escrow account (if that is what the fee was for). From there flows their allegation that Wells Fargo did not perform any services justifying imposition of the fee because "[a]n escrow created by a Lender in regard to a unit purchaser . . . would not only be inappropriate but unenforceable." *Id.* ¶¶14-15.

Wells Fargo Bank, N.A. is a national bank.[4] It was the entity that made the loan to the Smiths.

## ARGUMENT

### I.    THE SECOND AND THIRD CAUSES OF ACTION ARE BARRED BY FEDERAL BANKING PREEMPTION.

#### A.    The Preemption Authority of the National Bank Act.

Under the Supremacy Clause of the U.S. Constitution, the "laws of the United States" are "the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const., art. VI, cl.2. Accordingly, any state law that conflicts with a federal law is "without effect*." Cipolone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

While federal courts can sometimes be reluctant to find state laws preempted, the ordinary "presumption against federal preemption of state law is inapplicable to federal

---

[4]    Attached as Exhibit A hereto is a true copy of the page from the Office of the Comptroller of the Currency's website confirming that Wells Fargo N.A. is a national bank. The Court may take judicial notice of this public document. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Caselaw frequently refers to Wells Fargo Bank, N.A. as a national bank. *Wells Fargo Bank, N.A. v. BrooksAmerica Mortgage Corp.* 419 F.3d 107, 109 (2d Cir. 2005) ("Wells Fargo is a national bank with its principal place of business in Minnesota."); *World Trade Center Properties, LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 161 (2d Cir.2003) ("Defendant Wells Fargo is a national bank ... and by statute is deemed to be a citizen of every state in which it has offices.").

banking regulation." *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir.

2005). As the Second Circuit has observed, any presumption against preemption

"disappears" in the context of national bank regulation. *Clearinghouse Ass'n, L.L.C. v.

Cuomo*, 510 F.3d 105, 113 (2d Cir. 2007).

Indeed, there is a presumption *in favor of preemptive authority* of federal law

when it concerns the banking activities of national banks. That is because the National

Bank Act was intended to establish a banking system of "national character" with

"uniform and universal operation." *Talbott v. Silver Bow County*, 139 U.S. 438, 443

(1891). Courts therefore interpret any grant of power by that Act as "ordinarily pre-

empting[] contrary state law." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S.

25, 32-33 (1996) (states may not "prevent or significantly interfere with the national

bank's exercise of its powers").

The National Bank Act bestows on national banks the authority to exercise "all

such incidental powers as shall be necessary to carry on the business of banking." 12

U.S.C. § 24 (Seventh). Those incidental powers "include activities that are 'convenient

or useful in connection with the performance of one of the bank's established activities

pursuant to its express power under the National Bank Act.'" *Bank of America v. City

and County of San Francisco*, 309 F.3d 551, 562 (9th Cir. 2002). State laws that would

"prevent or significantly interfere with [a] national bank's exercise of" its express and

incidental powers are preempted. *Barnett Bank*, 517 U.S. at 33; *see also Farmers' &

Mechs.' Nat'l Bank v. Dearing*, 91 U.S. 29, 34 (1875) ("the States can exercise no control

over [national banks], nor in any [way] affect their operation, except in so far as Congress

may see proper to permit"); *Bank of America*, 309 F.3d at 561 (the National Bank Act

"protect[s] national banks against intrusive regulation by the States" and a state law is preempted if it "conflict[s] with federal law, frustrate[s] the purposes of the National Bank Act, or impair[s] the efficiency of national banks to discharge their duties").

The express power of the National Bank Act that is implicated here is the power granted to national banks to make real estate loans:

> Any national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate…and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order.

12 U.S.C. § 371(a). Under the Act, a national bank therefore has all incidental powers convenient or useful for a national bank in making any home mortgage loan. *Id.*, § 24 (seventh).

The courts have interpreted any grant of power by the NBA as necessarily preempting any state law. *Barnett Bank*, 517 U.S. at 25; *Watters v. Wachovia Bank, N.A.*, --U.S.--, 127 S. Ct. 1559, 1567-68 (2007) ("state law may not…curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the NBA"). If a state law interferes with the exercise of a national bank's powers, then that "attempt by a state to define [the bank's] duties or control the conduct of their affairs is absolutely void." *Davis v. Elmira Sav. Bank*, 161 U.S. 275, 283 (1896).

The OCC is charged with the enforcement of banking laws as they apply to national banks. *NationsBank of N.C. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256-57 (1995); 12 U.S.C. §1. As the Supreme Court stated just last term, the OCC "oversees the operations of national banks and their interactions with customers ... largely to the exclusion of other governmental entities, state or federal." *Watters*, 127 S.Ct. at 1564. As part of its powers, the OCC can define the scope of its own authority and

6

identify those aspects of a bank's incidental powers that it, rather than a state, should regulate. *Clearinghouse,* 510 F.3d at 111.

Under OCC regulations, "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4. *See also, e.g.*, OCC Preemption Determination and Order, 68 Fed. Reg. 46,264, 46,274 (Aug. 5, 2003) (preemption occurs whenever a state law "alter[s] or condition[s] a national bank's ability to exercise a power that Federal law grants to it"). The OCC has recognized that broad preemption of state regulation of national banks is critical to the National Bank Act's goals of permitting national banks to operate under a single, uniform set of rules:

> When national banks are unable to operate under uniform, consistent, and predictable standards, their business suffers, which negatively affects their safety and soundness. The application of multiple, often unpredictable, different state or local restrictions and requirements prevents them from operating in the manner authorized under Federal law, is costly and burdensome, interferes with their ability to plan their business and manage their risks, and subjects them to uncertain liabilities and potential exposure.

OCC, Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1908 (Jan. 13, 2004).

**B.    The State Law Claims Are Preempted By the NBA and OCC Regulation.**

Both of the Smiths' state law claims seek to hold Wells Fargo liable for charging a tax service fee, and seek recovery of that fee and to impose additional penalties for making the charge. Those claims are preempted because both the NBA, generally, and OCC regulations, specifically, grant Wells Fargo the power, without state interference, to charge loan-related fees in connection with the making of a loan.

7

The NBA granted to Wells Fargo all "incidental powers" appurtenant to making of real estate loans. One such power "convenient or useful" (*Bank of America*, 309 F.3d at 562) to lending is the power to charge fees for the loan. As the tax service fee was imposed at closing, in connection with the making of the loan to the Smiths, Wells Fargo plainly had power to charge it.

Although the power to charge non-interest fees is granted by the NBA itself, the OCC has directly spoken on the subject – and its regulations leave no question that Wells Fargo's charge cannot be challenged under state law. The imposition of fees by national banks is one of the many lending activities regulated by the OCC. An OCC Regulation codified at 12 CFR §7.4002(a), promulgated pursuant to § 24 (Seventh) of the NBA, authorizes national banks to collect "non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a). The establishment of such fees "are business decisions to be made by each bank". 12 C.F.R. § 7.4002(b)(2). A second OCC Regulation, codified at 12 C.F.R. § 34.4, provides that a national bank "may make real estate loans…without regard to state law limitations concerning…[t]he terms of credit." 12 C.F.R. § 34.4(4). Terms of credit includes fees and expenses charged in connection with a real estate loan, such as the tax service fee at issue here. *See Austin v. Provident Bank*, 2005 WL 1785285, at * 5 (N.D.Miss. July 26, 2005).

Plaintiffs' claims under the Real Property Tax Law § 952 *et seq.*, and the General Business Law § 349 *et seq.* are preempted under the OCC regulations. The claims concern the imposition of a non-interest fee or charge — the tax service fee — and so falls within the exclusive discretion of the national bank, subject only to OCC review.

12 C.F.R. § 7.4002(d). Furthermore, this closing fee is one of the terms of credit, and so within the ambit of the preemptive force of 12 C.F.R. §34.4.

In cases similar to this one, where plaintiffs allege violation of state laws in the charging of non-interest fees at closing, courts have found such claims preempted by these OCC regulations. In *Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 2213216, *1 (N.D.Cal. July 31, 2007), plaintiffs claimed that Wells Fargo's tax service and underwriting fees were overcharges that were deceptively imposed, in violation of a California general statute aimed at preventing fraudulent and deceptive business practices. The federal district court found the state law claims preempted. It held that for a plaintiff to "rely upon state law to contest the fairness of Wells's decision-making and setting of charges that are clearly authorized by the NBA and within the purview of the OCC's exclusive regulation . . . would essentially be allowing the superimposition of state law requirements upon the OCC's exclusive superintendence of Wells' exercise of its federally-conferred powers." *Id*. at *5. Similar results have been reached in other cases. *See, e.g., Wells Fargo Bank of Texas N.A. v. James*, 321 F.3d 488, 495 (5th Cir. 2003) (preempting state statute regulating check cashing fees); *Montgomery v. Bank of America Corp.*, 515 F.Supp.2d 1106, 1113-14 (C.D.Cal. 2007) (finding plaintiffs' state law claims challenging overdraft fees preempted); *Bank of America, N.A. v. Sorrell*, 248 F.Supp.2d 1196, 1199 (N.D.Ga. 2002) (finding state statutes prohibiting cash checking fees preempted).

As a non-interest charge, Wells Fargo's tax service fee is subject the exclusive regulation of the OCC. Any state law claim challenging the charging of this fee is preempted.

## II.    THE SECOND CAUSE OF ACTION IS OTHERWISE DEFICIENT.

### A.    Plaintiffs Do Not Have a Private Right of Action Under the Escrow Statute.

Apart from the preemption bar on the cause of action, the Smiths' claim under the Escrow Statute does not state a claim for relief.  In their Complaint, the Smiths allege that Wells Fargo's charge is improper because the fee was imposed to "contact the taxing authority, create the tax escrow, and insure timely payment of applicable taxes." *Complaint* ¶11.  This allegation was an obvious attempt to invoke the protections of Section 953(4) of the Escrow Statute, which prohibits charges for such tasks in certain circumstances.  Real Property Tax Law § 953(4).  Assuming, *arguendo*, that Section 953(4) is potentially applicable here – although the law does not mention cooperative apartment loans – the Smiths may not sue because the Attorney General, not they, have been given sole authority to file a lawsuit concerning an alleged Section 953(4) violation.

Some background may be helpful.  The Escrow Statute identifies certain duties and responsibilities incumbent upon mortgage investing institutions in the establishment of escrow accounts. Among the topics covered in the law are procedures for establishing such accounts; procedures for making billing arrangements with taxing authorities; fees; and enforcement.  The statute provides that a mortgagor has remedies only in one instance – to pursue violations of Section 956(1), which prohibits mortgage investing institutions from failing to pay property taxes within 180 days after they are due.  *Id.*, § 956(1).  The Attorney General, on the other hand,  is explicitly given the power to enforce Section 953, the section that prohibits a mortgage investing institutions from charging fees for the creation and maintenance of escrow accounts.  *Id.* § 957(1).

10

The Escrow Statute sets forth a comprehensive remedial scheme for addressing potential violations of Section 953(4).  In such an instance, when the Attorney General suspects a violation of Section 953(4), he is authorized to "take proof and make a determination of the relevant facts."  *Id.*, § 957(3).  If the facts suggest a violation, the Attorney General is authorized to file suit and seek to enforce the protections of that law. *Id.* § 957(1).  If the court determines in such a suit that the mortgage investing institution engaged in "repeated fraudulent or illegal acts," the court "may impose a civil penalty of not more than one thousand dollars for each violation."  *Id.* § 957(2).

The Smiths cite no basis for the contention in their Second Cause of Action that they are allowed to sue to enforce Section 953(4).  The Escrow Statute does not provide such a right expressly.   Indeed, having granted the Attorney General the right to enforce the law, the most logical conclusion is that the legislature's choice not to provide a private cause of action was deliberate.

Plaintiffs surely will contend this Court should recognize an implied right of action to enable them to enforce Section 953(4).  While, if the argument is raised Wells Fargo will address it in reply, the contention would plainly face formidable obstacles. The United States Supreme Court has noted that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979).  In this instance, the Attorney General is explicitly given the power to enforce Section 953(4), and the Court should be cautious in entertaining the possibility of permitting a mortgagor to enforce this provision as well.

In similar circumstances, the court in *Kane v. Marine Midland Bank, N.A.*, applied the principle established in *Transamerica* and refused to find an implied private right of action where a New York statute allowed some private enforcement and some enforcement by the Attorney General.  446 N.Y.S. 2d 873, 875 (N.Y. Sup. Ct. 1982). The plaintiffs in *Kane* sought to bring suit under the Debt Collection Procedures Act.  *Id.* at 873.  The law, however, explicitly provided that the violation at issue was a misdemeanor, enforceable by either the New York Attorney General or the District Attorney.  *Id.*  The Court refused to allow the private suit as an additional remedy, holding that because the law mixed private and public enforcement mechanisms the "conspicuous absence of any private remedy" in the section at issue "may only be viewed as deliberate."  *Id.*

Since the Smiths have no private right of action to enforce Section 953(4), plaintiffs may not bring suit under this statute.  Their Second Cause of Action must be dismissed even if not preempted.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Plaintiffs' Second and Third Causes of Action, under New York State Real Property Tax Law § 952 *et seq.*, and New York State General Business Law § 349 *et seq.*, should be dismissed with prejudice.

12

WELLS FARGO & COMPANY and
WELLS FARGO BANK, N.A.

By their attorneys,


/s/ Brian D. Hail
Brian D. Hail (BH – 1857)
GOODWIN PROCTER, LLP
599 Lexington Avenue,
New York, NY 10022
(212) 813-8800 (telephone)
(212) 355-3333(facsimile)
bhail@goodwinprocter.com


Thomas M. Hefferon (pro hac vice)
Marva R. Deskins (not admitted pro hac vice)
GOODWIN PROCTER, LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 346-4000 (telephone)
(202) 344-4444 (facsimile)
thefferon@goodwinprocter.com


Dated:  March 11, 2008

## INDEX OF EXHIBITS

Tab    Regarding

A.    National Banks Active as of 2/29/2008

B.    *Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 2213216 (N.D. Cal. July 31, 2007)

C.    *Austin v. Provident Bank*, 2005 WL 1785285 (N.D. Miss. July 26, 2005)

D.    *Ricciuti v. New York City Transit Authority*,  1991 WL 221110 (S.D.N.Y., Oct. 3, 1991)

# EXHIBIT A

## National Banks Active As of 2/29/2008

| CHARTER NO | NAME | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|
| 2333 | Univest National Bank and Trust Co. | Souderton | PA | 7759 | 354310 |
| 17733 | Uvalde National Bank | Uvalde | TX | 24465 | 363264 |
| 23068 | Valley Bank (National Association) | Elk Point | SD | 16385 | 465850 |
| 24666 | Valley Capital Bank, National Association | Mesa | AZ | 58399 | 3472167 |
| 15790 | Valley National Bank | Passaic | NJ | 9396 | 229801 |
| 15395 | Valley National Bank | Espanola | NM | 19245 | 962854 |
| 17174 | Valley National Bank | Tulsa | OK | 23737 | 347956 |
| 24121 | Vanguard National Trust Company, National Association | Malvern | PA | 57304 | 3045383 |
| 23849 | Vectra Bank Colorado, National Association | Farmington | NM | 2993 | 933957 |
| 16286 | Verus Bank, National Association | Derby | KS | 21463 | 728452 |
| 24650 | Vineyard Bank, National Association | Corona | CA | 23556 | 807665 |
| 23616 | Virginia National Bank | Charlottesville | VA | 34755 | 2708122 |
| 12591 | Vision Bank, National Association | Ada | OK | 4029 | 241157 |
| 24751 | Vnbtrust, National Association | Charlottesville | VA | 58748 | 3616680 |
| 22559 | Wachovia Bank of Delaware, National Association | Wilmington | DE | 33931 | 1224812 |
| 1 | Wachovia Bank, National Association | Charlotte | NC | 33869 | 484422 |
| 24728 | Wachovia Card Services, National Association | Atlanta | GA | 58496 | 3550131 |
| 24685 | Waterford Bank, National Association | Toledo | OH | 58433 | 3588424 |
| 23690 | Wayne Hummer Trust Company, National Association | Lake Forest | IL | 35063 | 2719810 |
| 18280 | Weatherford National Bank | Weatherford | TX | 25273 | 553766 |
| 24469 | Webster Bank, National Association | Waterbury | CT | 18221 | 761806 |
| 17202 | Wellington Trust Company, National Association | Boston | MA | 23741 | 692704 |
| 24471 | Wells Fargo Alaska Trust Company, National Association | Anchorage | AK | 57755 | 3223695 |
| 15317 | Wells Fargo Bank Grand Junction, National Association | Grand Junction | CO | 19109 | 2383903 |
| 18749 | Wells Fargo Bank Grand Junction-Downtown, National Associati | Grand Junction | CO | 12863 | 2383882 |
| 2597 | Wells Fargo Bank Northwest, National Association | Ogden | UT | 13718 | 688079 |
| 1741 | Wells Fargo Bank, National Association | Sioux Falls | SD | 3511 | 451965 |
| 21099 | Wells Fargo Financial National Bank | Las Vegas | NV | 27389 | 1225761 |
| 22897 | Wells Fargo HSBC Trade Bank, National Association | San Francisco | CA | 34075 | 2332808 |
| 17748 | West Michigan National Bank & Trust | Frankfort | MI | 24471 | 23045 |
| 24185 | West Texas National Bank | Midland | TX | 22957 | 237066 |
| 24683 | West Valley National Bank | Avondale | AZ | 58426 | 3480069 |
| 24552 | Western National Bank | Phoenix | AZ | 57917 | 3307410 |
| 6352 | Western National Bank | Cass Lake | MN | 5110 | 278751 |
| 13116 | Western National Bank | Duluth | MN | 5131 | 127055 |
| 16658 | Western National Bank | Odessa | TX | 22482 | 778466 |
| 24398 | Western National Trust Company | Los Angeles | CA | 57638 | 3192960 |
| 15346 | Western Springs National Bank and Trust | Western Springs | IL | 10086 | 199940 |
| 11668 | WF National Bank South Central | Faribault | MN | 5146 | 2362458 |
| 23918 | Wheaton College Trust Company, National Association | Wheaton | IL | 57150 | 2960788 |
| 14977 | Whitney National Bank | New Orleans | LA | 18538 | 873138 |
| 2151 | Wilber National Bank | Oneonta | NY | 7239 | 875918 |
| 15589 | Williamsburg First National Bank | Kingstree | SC | 17837 | 474825 |
| 10865 | Winona National Bank | Winona | MN | 5280 | 220059 |
| 17198 | Wood County National Bank | Quitman | TX | 23739 | 796769 |
| 16892 | Woodforest National Bank | Houston | TX | 23220 | 412751 |
| 17816 | Woodhaven National Bank | Ft. Worth | TX | 24551 | 513050 |
| 23926 | Woodlands National Bank | Hinckley | MN | 1417 | 980951 |
| 23121 | Woodtrust Asset Management, National Association | Wisconsin Rapids | WI | 32911 | 1907599 |
| 4639 | Woodtrust Bank, National Association | Wisconsin Rapids | WI | 5335 | 833749 |
| 21739 | World Financial Network National Bank | Columbus | OH | 27499 | 1391778 |
| 16718 | Worth National Bank | Plano | TX | 22652 | 793151 |
| 24343 | Worthington National Bank | Arlington | TX | 57414 | 3150205 |

# EXHIBIT B

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 2213216 (N.D.Cal.)
(Cite as: Slip Copy)

**H**Martinez v. Wells Fargo Bank, N.A.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.
Armando and Alinda MARTINEZ, on behalf of
themselves and a class of others similarly situated,
Plaintiffs,
v.
WELLS FARGO BANK, N.A.; Wells Fargo Home
Mortgage, Inc.; Wells Fargo FInancial Services, Inc.;
and Wells Fargo Real Estate Tax Services, LLC,
Defendants.
**No. C-06-03327 RMW.**

July 31, 2007.

Jacquetta Bardacos, Ronald D. Packard, Von G.
Packard, Timothy G. Blood, for Plaintiffs.
Robert Bader, William F. Sheehan, for Defendants.

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS COUNTS TWO THROUGH FOUR
OF SECOND AMENDED COMPLAINT

RONALD M. WHYTE, United States District Judge.
  *1 Defendants Wells Fargo Bank, N.A., Wells
Fargo Home Mortgage, Inc ., Wells Fargo Financial
Services, Inc., and Wells Fargo Real Estate Tax
Services, LLC (collectively, "Wells") move to
dismiss counts two through four of plaintiffs' second
amended complaint ("SAC") for failure to state a
claim. Plaintiffs Armando and Alinda Martinez
(together, "plaintiffs") purport to bring this action on
behalf of themselves and a class of similarly situated
individuals.[FN1]Plaintiffs oppose the motion. The court
has read the moving and responding papers and
considered the arguments of counsel. For the reasons
set forth below, the court GRANTS defendants'
motion to dismiss counts two through four of
plaintiffs' second amended complaint.

> FN1. No class has been certified under
> Fed.R.Civ.P. 23 in this action.

**I. BACKGROUND**

Plaintiffs allege that they are home mortgage
borrowers from whom Wells wrongfully charged and
collected fees for settlement services related to the
refinancing of their home mortgage in May of 2005.
SAC ¶ 4. Wells is a financial services company that
provides, *inter alia,* settlement services in connection
with residential mortgage loans. According to the
complaint, plaintiffs were given a good faith estimate
for closing costs by a loan broker which included an
estimate of $350 for an underwriting fee. *Id.* ¶ 33.Six
days later, Wells charged plaintiffs an underwriting
fee of $800. Plaintiffs assert that both the good faith
estimate and the actual charge were excessive.*Id.* In
particular, the risk assessment that is involved in
underwriting a loan is performed "by a computerized
automated underwriting system by a loan broker or
loan officer before Wells Fargo's loan clerks ever
receive the application," and Wells "merely runs
information collected by others about the borrower
and the proposed loan through the automated
program "at a *de minimus* cost." *Id.* ¶ 15.Plaintiffs
were also charged a tax service fee of $75 for service
provided by Wells Fargo Real Estate Tax Services,
LLC ("WFRETS") even though WFRETS
purportedly charged Wells less than $75 for
providing the service. *Id.* Plaintiffs also assert on
information and belief that Wells marks up fees for
other services.[FN2]*Id.*

> FN2. The complaint does not indicate what
> such other services are and how the related
> fees are marked up.

Plaintiffs further allege that because the Federal
National Mortgage Association ("Fannie Mae") and
the Federal Home Loan Mortgage Corporation
("Freddie Mac"), the federally-created entities that
will purchase the federally-related loans processed by
Wells, determine the requisite underwriting criteria
for loans they will buy, Wells has no interest in the
underwriting criteria at all. *Id.* ¶ 16.According to
plaintiffs, only those borrowers who meet Fannie
Mae's and Freddie Mac's underwriting criteria for
their loans are passed along to Wells. *Id.* ¶
25.Plaintiffs also allege that the loans at issue are
made for the purpose of immediately selling them to
investors, principally Fannie Mae and Freddie Mac.
*Id.* ¶ 19.Only borrowers with loans that qualify for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2213216 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 2

immediate purchase by Fannie Mae and Freddie Mac are members of the proposed class. Specifically, plaintiffs purport to bring this action as a class action on behalf of a class defined as:

*2 All persons and entities who, on or after January 1, 1998, obtained a federally-related home mortgage (1) whose automated underwriting score was "Accept," "Accept-Plus," "Approve" or a similar code indicating an acceptable loan for purchase by FANNIE MAE or FREDDIE MAC and paid one or more defendants an underwriting fee, or (2) was charged a fee by one or more defendants for tax services in an amount that exceeded the amount charged by the service entity.

Id. ¶ 1.

Plaintiffs also allege that Wells "overcharges in violation of state and federal laws, misrepresenting the costs of underwriting and tax services, failing to disclose the actual cost of these services and imposing illegally marked up underwriting, tax service and related costs of the mortgage contract"Id. ¶ 2. According to the complaint, the government charters for Fannie Mae and Freddie Mac provide that they are charged with increasing the affordability of home ownership by reducing costs to borrowers. Id . ¶ 10.Plaintiffs allege that Wells undermines these efforts by improperly charging for underwriting, tax services, and related services and keeping cost savings for itself. Id. ¶ 11.According to plaintiffs, Wells' conduct "frustrates and violates federal laws and policy, hurts competition among banks by allowing dishonest banks such as [Wells] obtain an unfair advantage over those banks that follow the law, and diminishes the safety and soundness of defendants and other banks."Id. In addition, "the fees charged do not relate in any manner to deterring any misuse by customers of banking services."Id. The fees vary depending on the branch office from which the loan originates and do not vary based on any differences among class members. Id. ¶ 27.

As pled, Wells requires its borrowers to pay the cost of automatic underwriting and tax services as a condition to obtaining a loan, and additionally, charges borrowers not only the cost of such services but an added markup from cost that Wells pockets. Id. ¶ 13.Wells also intentionally conceals its practices by listing the inflated underwriting charge on the HUD-1 Settlement Statement while failing to

disclose that the listed charge is not the actual cost incurred. Id. ¶ 30.Further, Wells allegedly fails to make the required disclosures pursuant to 24 C.F.R. § 3500.7(e)(1).Id. ¶ 31.

Counts two, three, and four all assert violations of Cal. Bus. & Prof.Code § 17200 et seq. Count two of plaintiffs' complaint alleges that Wells engaged in unlawful business acts and practices, count three alleges that Wells engaged in unfair business acts and practices, and count four alleges that Wells engaged in fraudulent business acts and practices.

## II. ANALYSIS

Wells moves to dismiss plaintiffs' state law claims in counts two through four on the basis that they are preempted by federal law and otherwise fail to state a claim. This court previously concluded that plaintiffs' § 17200 claims of unfair and deceptive business acts and practices were preempted by the National Bank Act ("NBA") and regulations enacted thereunder. See Mar. 30, 2007 Order Granting Motion to Dismiss Counts Two through Six of First Amended Complaint ("March 30, 2007 Order") at 10:15-12:15. The court concluded that plaintiffs failed to state a claim as to their § 17200 claim for unlawful business acts and practices. Id. at 13:4-15.However, the court granted plaintiffs leave to amend such claims.

### A. Legal Standard

*3 A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir.1994)."[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions."Bell Atlantic Corp. v. Twombly, 530 U.S. ----, 127 S.Ct. 1955, 1964-65 (2007) (citations and edit marks omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2213216 (N.D.Cal.)

**(Cite as: Slip Copy)**

the allegations in the complaint are true."*Id.* (citations omitted). The court is not required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."*Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir.1994).

**B. Section 17200 Claims**

For the reasons set forth below, the court finds that plaintiffs' amended § 17200 claims are either preempted by the National Bank Act and regulations thereunder or that plaintiffs have otherwise failed to state a § 17200 claim.

**1. Unfair and Deceptive Business Acts or Practices**

As this court stated in the March 30, 2007 Order, Congress expressly authorizes national banks to engage in real estate lending under the NBA:

(a) Authorization to make real estate loans; orders, rules, and regulations of Comptroller of the Currency

Any national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to section 1828(o) of this title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order.

12 U.S.C. § 371(a). Because of the "extensive federal statutory and regulatory scheme" enacted by Congress in the field of banking, "the usual presumption against federal preemption of state law is inapplicable to federal banking regulation."*Wells Fargo Bank N.A. v. Boutris,* 419 F.3d 949, 956 (9th Cir.2005). Nevertheless, "states may regulate national banks where 'doing so does not prevent or significantly interfere with the national bank's exercise of its powers.' " *Id.* at 963 (quoting *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 33 (1996)).

The extent of the NBA's regulation depends on both the enumerated and incidental powers conferred upon national banks. *Id.*"[A] national bank's activity is authorized as an incidental power, necessary to carry on the business of banking, within the meaning of 12 U.S.C. § 24, Seventh, if it is convenient or useful in connection with the performance of one of

the bank's established activities pursuant to its express powers under the National Bank Act."*Id.* at 960 (citation and internal quotations omitted).[FN3] However, a connection must exist between an incidental activity and an express power in order for the activity to be authorized as an incidental power.*Id.* (citations omitted). As this court held in the March 30, 2007 Order, the express power conferred by the NBA is the authority to "engage in real estate lending," including to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate."12 U.S.C. § 371. As relevant to the present action, the determination of interest and non-interest charges and fees are incidental powers to the express power of engaging in real estate lending. The Office of the Comptroller of the Currency ("OCC") has issued regulations that address national banks' powers to determine interest rates and non-interest charges and fees, including the preemptive effect of such powers, in Title 12 Title, Chapter I, Part 7, Subpart D.

> FN3. More specifically, § 24 addresses corporate powers authorized pursuant to a national bank's corporate form following the filing of its articles of association and organization certificate.

**\*4** Here, plaintiffs' amended allegations continue to premise their UCL claims upon Wells' conduct and discretion in setting, charging, and disclosing settlement service fees, namely for underwriting services and tax services related to settlement of federally-related home mortgages. However, as noted in the March 30, 2007 Order, 12 C .F.R. § 7.4002 specifically provides that a national bank "may charge its customers non-interest charges and fees, including deposit account service charges" and that the determination of such charges and fees are "business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles."[FN4]Further, the OCC regulations provide that a national bank is deemed to establish such charges and fees in accordance with safe and sound banking principles if "the bank employs a decision-making process through which it considers the following factors:"

> FN4. The NBA confers authority upon the OCC to promulgate regulations implementing the Act. *See*12 U.S.C. §

Slip Copy

Slip Copy, 2007 WL 2213216 (N.D.Cal.)

**(Cite as: Slip Copy)**

371(a) (conferring upon the OCC the authority to set restrictions and requirements for national banks' real estate lending power)."Federal regulations have no less pre-emptive effect than federal statutes."_Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,_ 458 U.S. 141, 153 (1982).

(i) The cost incurred by the bank in providing the service;

(ii) The deterrence of misuse by customers of banking services;

(iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and

(iv) The maintenance of the safety and soundness of the institution.

12 C.F.R. § 7.4002(b)(2).<sup>FN5</sup> Because of these regulations, this court held that the settlement fees at issue in plaintiffs' first amended complaint fell within the scope of the OCC's regulations as set forth in § 7.4002 and, therefore, plaintiffs' claims were preempted under the doctrine of conflict preemption.

> FN5. In addition, 12 C.F.R. § 34.4 provides that "a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning ... [t]he terms of credit ... [and][p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."12 C.F.R. § 34.4(4), 34.4(10).

Plaintiffs' amended pleadings do not take their § 17200 claims for unfair and deceptive business acts and practices outside the reach of § 7.4002. Plaintiffs have added allegations that Wells' conduct "frustrates and violates federal laws and policy, hurts competition among banks by allowing dishonest banks such as [Wells] obtain an unfair advantage over those banks that follow the law, and diminishes the safety and soundness of defendants and other banks."SAC ¶ 11. In addition, "the fees charged do not relate in any manner to deterring any misuse by customers of banking services."_Id._ Although these allegations seek to assert that Wells' charges for tax services, underwriting, and related fees fail to comply with the factors set by the OCC for decisions that accord with safe and sound banking principles, _see_§

7.4002(b)(2), plaintiffs' claims are still based on alleged improprieties in Wells' federally-conferred discretion in setting fees, which is within the incidental powers authorized by the NBA and the OCC regulations. Moreover, as stated in the July 10, 2007 Order, whether there is conflict preemption does not turn on whether a national bank has complied with these factors; rather the factors set forth in § 7.4002(b)(2) are merely guidelines provided by the OCC to banks of criteria banks should consider in setting non-interest charges and fees. Regulation of a national bank's adherence to these regulations are within the exclusive purview of the OCC. _Watters v. Wachovia Bank, N.A.,_ 127 S.Ct. 1559, 1564 (Apr. 17, 2007).

**\*5** The Supreme Court's recent decision in _Watters_ supports the court's conclusion. In _Watters,_ the issue before the Court was whether the mortgage business conducted by a national bank's operating subsidiary should be accorded the same preemption from state licensing, reporting, and visitorial regimes as the bank itself. The Court held that the mortgage business by the operating subsidiary is subject to the superintendence of the OCC to the exclusion of state registration requirements to the same extent a national bank's conduct that falls within its express and incidental powers under the NBA. _Id._ Although the issue before the _Watters_ Court differs from the issue before this court, the Court's analysis of the scope of the NBA and OCC regulations in preempting state laws is instructive. In particular, the Court noted that " [a]s the agency charged by Congress with supervision of the NBA, [the] OCC oversees the operations of national banks and their interactions with customers."_Id._"The agency exercises visitorial powers, including the authority to audit the bank's books and records, largely to the exclusion of other governmental agencies."_Id._ Although the Court reiterated that there is no field preemption by the NBA, _id._ at 1567 ("[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA"), the Court made clear that the specific grants of enumerated and incidental powers do preempt contrary state law, _id._("[w]e have interpreted grants of both enumerated and incidental powers to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law") (internal quotations, edit, and citation omitted). In particular, "[b]eyond

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 5
Slip Copy, 2007 WL 2213216 (N.D.Cal.)
**(Cite as: Slip Copy)**

genuine dispute, state law may not significantly burden a national bank's [ ] exercise of its real estate lending power, just as it may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the NBA."*Id.* at 1567-68.Thus, where state law would "significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way."*Id.* at 1567.

Here, as stated in the March 30, 2007 Order and above, the NBA explicitly confers upon national banks such as Wells the authority to engage in real estate lending, and the determination of interest and non-interest charges and fees associated with the business of real estate lending are incidental powers of that authority. Were the court to allow plaintiffs' § 17200 claims, which rely upon state law to contest the fairness of Wells's decision-making and setting of charges that are clearly authorized by the NBA and within the purview of the OCC's exclusive regulation, the court would essentially be allowing the superimposition of state law requirements upon the OCC's exclusive superintendence of Wells' exercise of its federally-conferred powers.*Watters* counsels against such a practice. Accordingly, the court concludes that plaintiffs' claims of unfair and deceptive business acts and practices are preempted by the NBA and the OCC's regulations thereunder.<sup>FN6</sup>

> FN6. The court again reiterates that in so holding, the court does not conclude that § 17200 claims are *per se* preempted by the NBA and regulations thereunder. Rather, to the extent a § 17200 claim seeks to contest the exercise of a national bank's enumerated or incidental authority, such a claim significantly interferes with the federally-conferred authority of the bank and the exclusive regulatory authority of the OCC.

## 2. Unlawful Business Practices or Acts

**\*6** The court previously held that plaintiffs' have failed to state a claim under the unlawful prong of § 17200 because plaintiffs failed to state a claim that Wells violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* based on alleged overcharges, did not sufficiently allege that Wells has acted unlawfully because it has exceeded its authority conferred by the NBA or regulations

thereunder, and failed to state a claim for violation of 24 C.F.R. § 3500, App. A. In their opposition, plaintiffs clarify that (1) they do not allege a RESPA violation as an unlawful predicate act supporting their UCL claim, and (2) they do not allege that Wells purported exceeding of their NBA authority serves as a predicate unlawful act for their UCL claim. Pls.' Opp'n at 13:7-14. Rather, plaintiffs appear to contend that the unlawful acts that serve as the predicates for their § 17200 claim are (1) Wells' non-disclosure of the actual costs of its settlement services and any mark-ups made to such costs purportedly pursuant to duties under Cal. Civil Code § 1572,<sup>FN7</sup> and (2) Wells' alleged non-compliance with the disclosure requirements for the HUD-1 form.

> FN7. Plaintiffs cite to paragraphs 40-43 of their SAC as support for their § 17200 claim. However, the cited allegations appear to relate to plaintiffs assertion that the doctrines of "accrual, fraudulent concealment, continuing violation, and equitable tolling" apply to their claims (presumably for statute of limitations purposes).

The court concludes that plaintiffs have failed to state a claim under the unlawful prong of § 17200 based on the two asserted predicate acts. Plaintiffs contend that Cal. Civil Code § 1572"imposes a duty on any party to a contract to not suppress that which is true, with knowledge or belief of the fact[ ] and to not make a suggestion, as a fact, when [it] does not believe it is true" and, further, imposes a duty upon a party to a transaction a duty to disclose material facts in its sole possession which it knows are not known to or reasonably discoverable by the other party. However, as discussed, *supra* § B.1, a national bank's discretion of what to charge for non-interest charges related to the enumerated power of providing real estate lending services is governed by the NBA and the OCC's regulation and regulated by the OCC. Under the federal scheme, Wells is required to disclose its settlement charges in the HUD-1 form, but is not required to additionally disclose its actual costs. Therefore, the purported additional or alternate disclosure requirements imposed by Cal. Civil Code § 1572 are preempted.

Plaintiffs also contend that Wells' non-compliance with the disclosure requirements of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2213216 (N.D.Cal.)
**(Cite as: Slip Copy)**

HUD-1 form serves as a predicate unlawful act and practice. Plaintiffs argue that Wells has failed to comply because, although the HUD-1 form requires Wells to list only charges and not actual costs, Wells improperly lists a charge consisting of a third-party fee plus Wells' purported mark-up instead of only the fee the third-party charges Wells.[FN8] However, as the court concluded in the March 30, 2007 Order, the applicable HUD regulation requires Wells to disclose only actual *charges.* In particular, the HUD regulation indicates that the HUD form is to disclose in itemized format all charges imposed upon the borrower by the lender. *See* Mar. 30, 2007 Order at 13:8-15 ("This form is to be used as a statement of *actual charges and adjustments* to be given to the parties in connection with the settlement.... The settlement agent shall complete the HUD-1 to *itemize all charges imposed* upon the Borrower and the Seller by the Lender and all sales commissions, whether to be paid at settlement or outside of settlement, and any other charges which either the Borrower or the Seller will pay for at settlement.") (quoting 24 C.F.R. § 3500, App. A) (emphases added). The court does not find that this disclosure requirement further requires Wells to disclose its actual costs of settlement services or the components making up the actual charges imposed.

> FN8. As noted above, although plaintiffs' first count, which is not the subject of the present motion to dismiss, assert that Wells improperly marked up its charges in violation of RESPA, plaintiffs have conceded that they do not argue that a violation of RESPA serves as a predicate unlawful act for their § 17200 claim.

### III. ORDER

*7 For the foregoing reasons, the court GRANTS defendants' motion to dismiss counts two through four of plaintiffs' second amended complaint.

N.D.Cal.,2007.
Martinez v. Wells Fargo Bank, N.A.
Slip Copy, 2007 WL 2213216 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1785285 (N.D.Miss.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

▷Austin v. Provident Bank
N.D.Miss.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Mississippi,
Greenville Division.
Mary L. AUSTIN, et al., Plaintiffs,
v.
THE PROVIDENT BANK, et al., Defendants.
No. Civ.A.4:04 CV 33 P B.

July 26, 2005.

*MEMORANDUM OPINION*

<u>PEPPER</u>, J.

**\*1** This matter comes before the court upon Plaintiffs' Motion to Remand [14-1]. Upon due consideration of the motion and the responses filed thereto the court is prepared to rule.

## I. FACTUAL BACKGROUND

On October 8, 2003 five plaintiffs joined in filing the instant case in the Circuit Court of Leflore County, Mississippi levying claims against a national bank and various Mississippi mortgage broker companies for alleged predatory lending practices associated with mortgage loans secured by the plaintiffs' real property. The Complaint sets forth twelve causes of action: (1) fraudulent inducement, misrepresentation, and concealment; (2) cancellation and removal of clouds from titles; (3) fraudulent conveyance; (4) rescission and cancellation; (5) injunction; (6) accounting; (7) unjust enrichment; (8) breach of fiduciary duty; (9) breach of duty of good faith and fair dealing; (10) tortious interference with a contract; (11) violation of the Mississippi Consumer Loan Broker Act and the Mississippi Mortgage Consumer Protection Act, <u>Mississippi Code Annotated §§ 81-19-1</u>*et seq.* and <u>81-18-1</u>*et seq.,* respectively; and (2) intentional infliction of emotional distress.

In the Complaint, the plaintiffs disclaim any remedies under federal law, specifically disclaiming any remedies under, *inter alia,* the National Bank Act.

The plaintiffs' claims surround their basic allegation that:
[T]he defendant lender acting in concert and conspiracy with the defendant mortgage brokers, entered into a deliberate, systematic pattern and plan of targeting to disadvantaged individuals in need of financing who were, because of their need and/or socioeconomic and financial conditions, more vulnerable to the defendants' practices, and sold to such persons, including these plaintiffs, overpriced loans at interest rates which were outside the reasonable commercial standards of appropriate risk-based pricing, charging excessive, improper and fraudulent fees, including broker fees and other charges and concealing these excessive charges, manipulating generally accepted underwriting standards and ratios for creditworthiness in order to qualify borrowers, including these plaintiffs, for loans in excess of their needs or ability to pay unnecessarily increasing the amount of the loan beyond the borrower's needs and best interests and then falsely representing to the plaintiffs/borrowers that such charges were reasonable, necessary and appropriate charges for obtaining their loans, and/or extending loans based on the borrowers' collateral rather than their ability to pay.

Complaint, ¶ 15 (emphasis added).

On February 13, 2004, Provident removed this case to federal court based on its arguments that this court possesses federal diversity jurisdiction because of fraudulent misjoinder and joinder (arguments that have since been abandoned) and federal question jurisdiction based on the bankruptcy filings of one or more of the plaintiffs and based upon complete preemption of the National Bank Act.

**\*2** With respect to federal question jurisdiction, the plaintiffs argue in their motion to remand that the court should abstain from exercising bankruptcy jurisdiction either under the doctrine of mandatory abstention or discretionary abstention. They argue further that there is a lack of federal question jurisdiction because they disclaimed all federal remedies in their complaint and that, although the National Bank Act may preempt actions for usury

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

against national banks, said act does not preempt state tort suits not alleging usury. As the plaintiffs put it in their brief, all usurious interest may be excessive interest but not all excessive interest is usurious.

Provident responds that despite the plaintiff's artful pleading, their basic allegations involve claims for usury. In addition, Provident argues, all of the claims against them involve the real estate lending powers granted to them as a national bank by the National Bank Act and are therefore preempted by that Act. Provident posits that the Office of the Comptroller of the Currency's January 13 2004's regulation found in 12 C.F.R. § 34.4, read in conjunction with the U.S. Supreme Court's ruling in *Beneficial National Bank v.. Anderson,* 539 U.S. 1 (2003) (holding that the National Bank Act provided exclusive cause of action for usury against national banks), requires a finding that this case is preempted by the National Bank Act even if the case does not specifically allege usury. This is because the instant case alleges, among other things, "interest rates which were outside the reasonable commercial standards of appropriate risk-based pricing, [and] ... excessive, improper and fraudulent fees."According to the defendants, this language in the Complaint is a clever mirage to avoid preemption of the National Bank Act.

### III. DISCUSSION

### A. Standards for Remand

The burden is on the party seeking to preserve the court's removal jurisdiction to show that the requirements for removal have been met. *E.g., Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.,* 99 F.3d 746 (5th Cir.1996). The cases are legion that stand for the proposition that if federal subject matter jurisdiction via removal is doubtful, then the case should be remanded. *E.g., Spillers v. Tillman,* 959 F.Supp. 364 (S.D.Miss.1997). On considering a motion to remand, a federal court is limited solely to the jurisdictional question of its authority to hear the case.*Buchner v. FDIC,* 981 F.2d 816 (5th Cir.1993).

### B. Bankruptcy Jurisdiction

Under 28 U.S.C. § 1334(b), a defendant may remove a case from state court if it arises under,

arises in, or is related to a bankruptcy petition. For a case to arise *under* Title 11, the claims asserted must be predicated on a right created by Title 11. *See e.g., In re Chargit, Inc.,* 81 B.R. 243 (Bankr.S.D.N.Y.1987). Cases arising *in* Title 11 are those not based on any express right of Title 11 but would have no existence outside bankruptcy.*Matter of Wood,* 825 F.2d 90 (5th Cir.1987). Since the instant case is a state tort action filed before the bankruptcy petitions filed by Ray and Willie Mae Weathers and Mary L. Austin, this case clearly neither arises under nor arises in Title 11.

**\*3** A case that neither arises under nor arises in Title 11 can nevertheless be properly removed to federal court under § 1334(b) if it is "related to" a bankruptcy proceeding. Determining whether a proceeding is "related to" Title 11 is significant because the district court (either the district judge or the bankruptcy judge) to whom cases have been referred can exercise jurisdiction over both core and noncore proceedings so long as the proceedings are "related to" the underlying bankruptcy case. *Matter of Wood, supra.*The statutes do not define "related to" and the courts have articulated various definitions. The Fifth Circuit Court of Appeals recently held that proceedings "related to" a bankruptcy case include (1) causes of action owned by the debtor which become property of the estate under the Bankruptcy Code, and (2) suits between third parties which have an effect on the bankruptcy estate. *Arnold v. Garlock, Inc.,* 278 F.3d 426 (5th Cir.2001). Similarly, the Seventh Circuit has held that a case is "related to" a bankruptcy proceeding if the dispute affects the amount of property available for distribution or the allocation of property among creditors. *Matter of Xonics, Inc.,* 813 F.2d 127 (7th Cir.1987).

The court concludes that the instant case is indeed "related to" the plaintiffs' pending bankruptcy petitions, which most assuredly should have been mentioned as a contingent interest on the petitions, because monies recovered, if any, from this case will be property of their bankruptcy estates. Accordingly, this court does have jurisdiction based on 28 U.S.C. § 1334(b).

### C. Abstention

The plaintiffs argue that even if the court

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1785285 (N.D.Miss.)
(Cite as: Not Reported in F.Supp.2d)

concludes that it possesses bankruptcy jurisdiction over this case, the court should abstain from exercising that jurisdiction based upon the doctrines of mandatory or discretionary abstention.

*1. Mandatory Abstention*

Commensurate with 28 U.S.C. § 1334(c)(2), the court's abstention from exercising bankruptcy jurisdiction is mandatory if (1) a party files a timely motion to abstain; (2) the underlying proceeding is based on state law; (3) the proceeding is related to a case under Title 11 but does not arise under or arise in Title 11; (4) the proceeding is one which could not have been brought in federal court absent the bankruptcy proceeding; and (5) the proceeding is one which can be timely adjudicated in state court. *E.g., In re S.E. Hornsby & Sons Sand and Gravel Co., Inc.,* 45 B.R. 988 (Bankr.M.D.La.1985).

Ostensibly, the plaintiffs can establish all elements required for mandatory abstention. However, 28 U.S.C. § 157(b)(4) provides that "[n]on-core proceedings under 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." As discussed above, the underlying case does not arise in or under Title 11, but rather is only "related to" Title 11. A "related to" case, by definition, is a non-core proceeding. *Matter of Boughton,* 49 B.R. 312, 315 (Bankr.N.D.Ill.1985). Therefore, the doctrine of mandatory abstention is inapplicable to the instant case.

*2. Discretionary Abstention*

**\*4** The doctrine of discretionary abstention can be found in 28 U.S.C. § 1334(c)(1) which states: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

Through § 1334(c)(1), Congress intended that concerns of judicial convenience and comity should be met by the discretionary exercise of abstention when appropriate, not by rigid limitations on federal jurisdiction. *Matter of Wood, supra.* Discretionary abstention may be compelling where a state

proceeding sounds in state law and has only a limited connection with the debtor's bankruptcy case. *In re Titan Energy, Inc.,* 837 F.2d 325 (8th Cir.1988).

Given that the instant case has only a tenuous relationship to the three plaintiffs' pending bankruptcy petitions, the court concludes that it will abstain from exercising its bankruptcy jurisdiction in the interests of justice, comity with Mississippi courts, and respect for Mississippi law.

D. Federal Question Jurisdiction Based on the National Bank Act

In 2003, the Supreme Court in *Beneficial, supra* held that a case filed under a state's usury laws is completely preempted by the National Bank Act. 539 U.S. at 11. In January 2004, the Office of the Comptroller of the Currency, who has the authority to issue regulations related to the National Bank Act, issued 12 C.F.R. § 34.3 which provides in relevant part:

(a) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning: ... (3) Loan-to-value ratios; (4) The terms of credit ... (5) The aggregate amount of funds that may be loaned upon the security of real estate; (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents; (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages; ... [and] (12) Rates of interest on loans....

(b) State laws on the following subject are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national bank's real estate lending powers: (1) Contracts; [and] (2) Torts;....

In its decision remanding the case of *Hines et al. v. Bank of America, et al.,* Cause Number 2:03CV64, this court held that the Supreme Court's decision in *Beneficial* that state usury claims are completely

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1785285 (N.D.Miss.)
(Cite as: Not Reported in F.Supp.2d)

preempted by the National Bank Act did not apply to the facts of *Hines* because there was no specific claim of usury. Indeed, the claims asserted in *Hines* were similar to those asserted here. The court in *Hines,* however, did not consider the effect of the OCC's 2004 promulgation of 12 C.F.R. § 34.3.

**\*5** It is difficult to read the basic nucleus of facts giving rise to the twelve claims asserted in the case at bar without noticing the relationship those claims have with § 34.3. Although the Complaint never makes use of the term "usury," nor does it seek redress under a state usury statute like the complaint in *Beneficial,* it clearly seeks remedies for the charge of excessive interest and fees from national banks in connection with real estate loans. With respect to interest, § 34.3(12) appears to preempt claims related to the "rates of interest on loans" without regard to whether those rates are *per se* usurious. The phrase "interest rates which were outside the reasonable commercial standards of appropriate risk-based pricing" clearly falls within the ambit of § 34.3(12)'s "rates of interest on loans."

Other claims also seem covered by § 34.3. For example, subsection (a)(9) covers "disclosures in credit-related documents, including information to be included in credit applications and other credit-related documents."This relates to the plaintiffs' claims that the defendants procured false, fraudulent, and inaccurate documentation concerning the plaintiffs' mortgage loan applications and that the defendants provided the loan closing attorneys with false and/or misleading data from which the loan documents were prepared. Subsection (a)(5) regarding "aggregate amount of funds that may be loaned upon the security of real estate" speaks to the plaintiffs' claim that the defendants extended "loans in excess of their needs or ability to pay unnecessarily increasing the amount of the loan beyond the borrower's needs and best interests."The plaintiffs' claims of exorbitant fees and expenses in connection with the loans, excessive and improper fees falsely represented to the borrowers, and misrepresentations of costs that the plaintiffs would incur to borrow monies to purchase properties fall within the general realm of subsection (a)(4)'s "terms of credit" provision. What is more, 12 C.F.R. § 7.4001's definition of " 'interest' as used in 12 U.S.C. § 85"includes any payment compensating a creditor or prospective creditor for an extension of credit, [or]

making available a line of credit.... It includes, *among other things,* the following fees connected with credit extension or availability: numerical periodic rates, late fees, [etc.]."12 C.F.R. § 7.4001 (emphasis added). It is likely that this definition of "interest" would include some of the fees charged to the plaintiffs that were allegedly excessive.

In general, state regulation is preempted if it will "significantly interfere with the national bank's exercise of its powers."*Barnett Bank of Marion County v. Nelson,* 517 U.S. 25, 33 (1996). While it is true that § 34.3(b) provides that state laws on contracts and torts are not necessarily inconsistent with the real estate lending powers of national banks, thereby avoiding preemption by the National Bank Act, subsection (b) goes on to say that such state law on torts or contracts "apply to national banks to the extent that they only incidentally affect the exercise of" those powers.

**\*6** The wording of the Complaint seems on the surface seek redress under Mississippi contract and tort law-*i.e.,* primarily under fraud. However, allowing redress under these state tort and contract laws for the instant claims would not result in an incidental effect upon the exercise of a national bank's real estate lending powers granted by the National Bank Act, 12 U.S.C. § 85. Rather, such redress would circumvent preemption of the National Bank Act and the aforementioned regulations promulgated by the OCC.[FN1]

> FN1."Federal regulations have no less pre-emptive effect than federal statutes."*Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 153 (1982)

In order to determine whether a cause of action confers federal question jurisdiction, the court examines the plaintiffs' well-pleaded complaint.*Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149 (1908). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the fact of plaintiff's properly pleaded complaint."*Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987).. However, the well-pleaded complaint rule has exceptions. One exception applies when Congress so completely preempts a particular area that any civil complaint raising this select group of claims is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1785285 (N.D.Miss.)
(Cite as: Not Reported in F.Supp.2d)

necessarily federal in character. *Arcana v. Ochsner Health Plan,* 338 F.3d 433, 437 (5th Cir.2003). One court has noted that "[t]he only statutes that completely preempt state law are the Labor Management Relations Act, the Employee Retirement Security Act, and the National Bank Act."*Amalgamated Gadget v. Mack,* 2004 WL 549483, * 5 (N.D.Tex.2004) (citing *Beneficial,* 529 U.S. at 559-60).

Having considered the Supreme Court's decision in *Beneficial* combined with 12 C.F.R. § 34.3 and the National Bank Act, 12 U.S.C. §§ 85 and 86, the court concludes that the claims asserted by the plaintiffs in the instant case under Mississippi law that relate to Provident's real estate lending powers granted by the National Bank Act are preempted by that Act. Consequently, the court concludes that it possesses federal question jurisdiction over said claims against the national bank. The court will assert supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining claims, in addition to those asserted against the Mississippi mortgage broker defendants.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the Plaintiffs' Motion to Remand [14-1] should be denied. Accordingly, and Order shall issue forthwith, THIS DAY of July 25, 2005.

N.D.Miss.,2005.
Austin v. Provident Bank
Not Reported in F.Supp.2d, 2005 WL 1785285 (N.D.Miss.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1991 WL 221110 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**Ricciuti v. New York City Transit Authority
S.D.N.Y.,1991.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Alfred RICCIUTI & Daniel Ricciuti, Plaintiffs,
v.
NEW YORK CITY TRANSIT AUTHORITY,
N.Y.C. T.A. Police Dept., N.Y.C. T.A. Police Chief
V. del Castillo, N.Y.C. T.A. P.D.Lieut. R.L. Wheeler,
N.Y.C. T.A. P.O. Henry Lopez, the City of New
York, N.Y.C. Corrections Dept., N.Y.C. Corrections
Comm. R. Koehler, N.Y.C. Corrections Officer
Harlice Watson, Defendants.
**No. 90Civ. 2823(CSH).**

Oct. 3, 1991.

*MEMORANDUM OPINION AND ORDER*

_HAIGHT_, District Judge:
    *1 Plaintiffs Alfred and Daniel Ricciuti move to
strike defendants Wheeler's and Lopez's answer to
the complaint pursuant to F.R.Civ.P. 12(f). Plaintiffs
contend that the answer should be stricken, as it was
allegedly served in an untimely fashion. This court
will construe plaintiffs' motion as one for default
judgment pursuant to Rule 55(b) for failure "to plead
or otherwise defend" in accordance with the rules.[FN1]
For the reasons stated below, plaintiffs' motion is
denied.

*Background*

    Familiarity with the facts of this case is assumed.
A brief review of the procedural posture of this case
would be helpful.

    On April 30, 1990, plaintiffs served the five
Transit Authority defendants (including Wheeler and
Lopez) with a copy of the summons and complaint.
Time to respond was extended by consent until July
3, 1990. On July 3 (docketed as July 6), the five
Transit Authority defendants moved to dismiss the
complaint, in significant part, pursuant to Rule
12(b)(6). Plaintiffs crossmoved under Rule 15(a) to
amend their complaint, dropping certain claims. In
November, plaintiffs filed with the Clerk an

application under Rule 55 for default against the
named defendants for "failure to answer, plead to or
otherwise defend," but no default was noted. In an
Opinion and Order dated December 13, 1990, this
Court granted the Rule 12(b)(6) motion with regard
to defendants Transit Authority, Transit Authority
Police Department, and T.A. Police Chief del
Castillo. Leave to amend the complaint as to these
three defendants was denied. The case remained
against Wheeler and Lopez, whose Rule 12(b)(6)
motion did not succeed, as well as the other named,
non-moving defendants, leave to amend the
complaint being granted as to them.

    On January 23, 1991 this Court directed entry of
judgment under Rule 54(b) in favor of the Transit
Authority, the Transit Authority Police Department,
and del Castillo. Plaintiffs filed a notice of appeal. At
the same time, plaintiff moved for a stay of time to
file their amended complaint as to all remaining
defendants, pending the Second Circuit appeal. On
April 15, 1991, Wheeler and Lopez served their
answer to plaintiffs' complaint. Plaintiffs maintain
that the answer should be disregarded for failure to
respond in a timely fashion (which this Court
construes as a motion for default judgment).

    On August 5, 1991, the Second Circuit reversed
this Court's decision of December 13, 1990, holding
that the proposed amended complaint sufficiently
alleged causes of action under 42 U.S.C. § 1983
against the TA, the TAPD, and del Castillo, and
remanding the case for further consideration
consistent with its ruling.

*Discussion*

    A plaintiff may seek relief or obtain judgment
against defendant under Rule 55 when defendant "has
failed to plead or otherwise defend as provided by
these rules." This rule is a "drastic remedy and
should be resorted to only in extreme situations."
_E.F. Hutton & Co., Inc. v. Moffatt_, 460 F.2d 284, 285
(5th Cir.1972). In the present case, Wheeler and
Lopez did not answer the complaint with the time
specified by the rules and extended by stipulation.
However, they did move to dismiss the complaint by
that date. "It is undisputed that motions challenging a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 221110 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

complaint for failure to state a claim upon which relief can be granted, fall squarely within the ambit of the phrase 'otherwise defend.' " *Wickstrom v. Ebert,* 101 F.R.D. 26, 33 (E.D.Wis.1984), *citing Rudnicki v. Sullivan,* 189 F.Supp. 714, 715 (D.Mass.1960); *Bass v. Hoagland,* 172 F.2d 205, 210 (5th Cir.1949), *cert. denied,*338 U.S. 816 (1949).

**\*2** Plaintiffs contend that since Wheeler's and Lopez's Rule 12(b)(6) motions only challenged a portion of the complaint, those portions not challenged should have been answered. In *Gerlach v. Michigan Bell Telephone Co.,* 448 F.Supp. 1168, 1174 (E.D.Mich.1978), the court held that "separate counts are, by definition, independent bases for a lawsuit and the parties are responsible to proceed with litigation on those counts which are not challenged by a motion under F.R.C.P. 12(b)." *Gerlach* acknowledged that the rules are silent on this issue and that there is a dearth of case law on this particular subject. *Ibid.*

I decline to follow *Gerlach.* The language of Rule 12(a) indicates a contrary result. Rule 12(a) provides that "the service of a motion permitted under this rule alters the period of time as follows, unless a different time is fixed by order of the court ..." *Any* motion, particularly when the motion addresses a significant portion of the complaint (as in the present case), will suspend the time to answer any claim. As a matter of policy and judicial economy such a conclusion is required. Were it necessary to serve an answer in piecemeal fashion, as *Gerlach* suggests, a procedural thicket would emerge. Thorny questions would arise as to how the case should proceed pending resolution of the motion. The present situation is a case and point. Had an answer been required in July of 1990 on those count(s) not addressed,[FN2] both plaintiffs and defendants would have found themselves in a quagmire. Should discovery proceed with regard to *some* of the defendants, and then await the "arrival" of the other claims and defendants, particularly given the fact that an appeal was taken? Such an approach is inefficient. Legal commentators have disagreed with the *Gerlach* decision (*see*Wright & Miller, *Federal Practice and Procedure* § 1346 at 181 (1990)), and recently a court in *Brocksopp Engineering, Inc. v. Bach-Simpson, Ltd.,* 136 F.R.D. 485 (E.D.Wis.1991), explicitly rejected the *Gerlach* decision for the reasons stated above.

In any event, *Gerlach* declined to enter default judgment against the defendant for failure to answer the claims not challenged by motion. Even if plaintiffs in this case maintain that they were unfairly prejudiced by the failure to answer, as depositions could not be taken to support their § 1983 claim against the Transit Authority, its police department and the police chief, that claim has been upheld on appeal and plaintiffs may now proceed with it.

Thus, Wheeler and Lopez satisfied their procedural requirements and were not required to answer prior to a decision on their motion to dismiss. Plaintiffs' application in November for default was inappropriate and was properly not entered by the Clerk of the Court. Were it entered it would be set aside for "good cause" pursuant to F.R.C.P. 55(c).

Normally, defendants Wheeler and Lopez would have ten (10) days following notice of the decision to respond to the complaint. F.R.C.P. 12(a). However, in the decision of December 13, 1990, this court granted plaintiffs twenty (20) days to file an amended complaint, and the time was ultimately extended to January 16, 1991. Plaintiffs then filed a motion for a stay of time to file their amended complaint. Understandably, Wheeler and Lopez were wary of serving an answer to the original complaint which would eventually be mooted by the amended complaint. While counsel perhaps should have informed the Court of its quandary and asked for guidance, failure to do so does not justify the "extreme sanction" of default judgment and precludes deciding the claim on its merits. *Liechtenstein v. Jewelart, Inc.,* 95 F.R.D. 511, 513 (E.D.N.Y.1982). Only after learning on March 4, 1991 that plaintiffs may not file an amended complaint (Efron Aff. ¶ 10) and a disagreement over whether an answer was required prior to a final decision on the motion to dismiss (O'Connell Aff. ¶ 8), was an answer served by Wheeler and Lopez. While more than a month's delay followed before the serving of the answer, the procedural complexity of this case could justify the delay or at least preclude the entry of default judgment.

**\*3** Plaintiffs are ordered to serve and file an amended complaint, consistent with the rulings to date, within twenty (20) days of this Opinion and Order. All defendants are ordered to serve an answer

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 3
Not Reported in F.Supp., 1991 WL 221110 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

to the amended complaint within the time provided by the rules for answering complaints.

The parties are directed to attend a status conference in Room 307 at 2:30 p.m. on December 20, 1991.

It is SO ORDERED.

> FN1.Rule 12(f) allows a court to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." It does not, however, provide a remedy for failure to plead within the proscribed time limits.

> FN2. It appears from the briefs filed in the motion to dismiss that the only count not addressed in Wheeler's and Lopez's motion is the § 1983 claim.

S.D.N.Y.,1991.
Ricciuti v. New York City Transit Authority
Not Reported in F.Supp., 1991 WL 221110 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.