**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

**ANDREW WILLIAM SMITH and LISA VELTEN-SMITH,** Individually and on behalf of all others similarly situated

Civil Action No.:
08 CV 0564 (LAK)(DFE)

*Plaintiffs,*

**ECF**

v.

**WELLS FARGO & COMPANY,** a California Corporation,
**WELLS FARGO BANK, N.A.** a California Corporation,
and Does 1 through 20,

*Defendants.*
-------------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Stuart E. Nahas, Esq.
ZRAICH, NAHAS & RICH
Attorneys for Plaintiffs
Andrew William Smith & Lisa Velten-Smith
303 Fifth Avenue
New York, New York 10016
(212) 686-0855

Wayne S. Kreger, Esq. (admitted *pro hac vice*)
Gillian L. Wade (admitted *pro hac vice*)
MILSTEIN, ADELMAN & KREGER, LLP
Attorneys for Plaintiffs Andrew William Smith &
Lisa Velten-Smith
2800 Donald Douglas Loop North
Santa Monica California 90405
(310) 396-9600

## TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION**……………………………………...………3

II.    **STATEMENT OF FACTS**……………………………………..2

III.    **STANDARD**……………………………………………………3

IV.    **PLAINTIFFS' STATE LAW CLAIMS ARE
      NOT PREEMPTED BY THE NATIONAL BANKING ACT**……………..3

    A.    **Plaintiffs' State Property Tax and Section 349 Claims Are
      Laws of General Applicability that Do Not "Prevent or
      Significantly Interfere" with a National Banks' Exercise
      of Its Powers**……………………………………………...………5

        1.    **New York General Business Law Section 349 Prohibits
            All Businesses Operating in the State From Deceptive
            Practices and Is Not Preempted**…………………………………...5

        2.    **Plaintiffs' Property Tax Claim Does Not Conflict With Any NBA
            Provision or OCC Regulation and Is Not
            Preempted**………………………………………...………..…10

        3.    **OCC Regulations Confirm Plaintiffs' State Law Claims Are Not
            Preempted**………………………………………………………10

    B.    **Plaintiffs' State Law Statutes Differ from the Statutes Preempted in
      Wells Fargo's Case Law, Because They Do Not Apply Specifically to
      Banks Nor Do they Prohibit Banks from Exercising Federally-
      Granted Banking Power**………………………………...………13

V.    **PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION
      UNDER NEW YORK'S REAL PROPERTY TAX LAW**………………16

VI.    **CONCLUSION**………………………………………………...18

## TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE**

*Bank of America v. City and County of San Francisco,* 309 F.3d 551 (9th Cir. 2002).....13

*Bank of America, N.A. v. Sorrell*, 248 F. Supp. 1196 (N.D. Ga. 2002)……………...…..14

*Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 116 S. Ct. 1103 (1996)...4, 14, 15

*Carson v. H &R Block, Inc.*, 250 F. Supp. 2d 669 (S.D. Miss. 2003)……………………7

*Clearing House Ass'n, L.L.C. v. Cuomo,* 510 F.3d 105 (2d Cir. 2007)…………………...5

*Cohen v. J.P. Morgan Chase & Co., et al.*, 498 F.3d 111 (2d Cir. 2007)………………...9

*Cortazar v. Wells Fargo & Co.,* No. C 04-894-JSW, 2004 WL 1774219 (N.D. Cal.
    August 9, 2004)…………………………………………………………….……..8

*Cross County Bank v. Klussman*, No. C-01-4190-SC, 2004 WL 966289
    (N.D. Cal. April 30, 2004)……………………………………………………………8

*Davis v. Elmira Sav. Bank,* 161 U.S. 275, 16 S. Ct. 502 (1896)…………………………14

*Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S. Ct. 1210 (1963)...4

*Gerel Corp. v. Prime Eastside Holdings, LLC*, 12 A.D.3d 86, 783 N.Y.S.2d 355 (N.Y.
    App. Div. 2004)………………………………………………………………...18

*Gibson v. World Savings and Loan Ass'n*, 103 Cal. App. 4th 1291
    (4th  Dist. 2d Div.2002)…………...……………………………………...……..8, 13

*Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829 (E.D.N.Y. 1995)……………………...17

*Goshen v. Mutual Life Ins. Co. of N.Y.,* 98 N.Y.2d 314 (2002)…………………………18

*Great Western Resources, LLC v. Bank of Arkansas, N.A.,* No. 05-5152, 2006 WL
    626375 (W.D. Ark. March 13, 2006)……………………………………………….7

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001)……………………………………………3

*Hines v. Davidowitz*, 312 U.S. 52, 61 S. Ct. 399 (1941)…………………………………4

*Jefferson v. Chase Home Finance, et al.*, No. C06-6510, 2007 WL 4374410, *14
    (N.D. Cal. December 14, 2007)……………………………………………………16

*Jaramillo v. Weyerhaeuser Co.*, 2007 WL 194011 (S.D.N.Y. January 24, 2007)…...….17

*Maurizio v. Goldsmith*, 230 F. 3d 518 (2d Cir. 2000)………………………………….5

*Martinez v. Wells Fargo Bank*, *N.A.*, No. C-06-03327-RMW, 2007 WL 2213216
(N.D. Cal. July 31, 2007)……………………………………………………...15, 16

*Montgomery v. Bank of America,* 515 F. Supp 2d 1106 (C.D. Cal. 2007)…………....13

*Negrin v. Norwest Mortgage, Inc.,* 263 A.D. 39, 31 N.Y.S.2d 246 (1999)……..…...17

*Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123 (2d Cir. 2001)…….…3

*Patterson v. Regions Bank*, No. 06-CV-469-DRH, 2006 WL 3407852
(S.D. Ill. Nov. 27,2006)……………………………………………………………8

*Saxton v. Capital One Bank*, 392 F. Supp. 772 (S.D. Miss. 2005)……………….....6-7

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974)……………………….3

*Smith v. Wells Fargo Bank*, *N.A.*, 135 Cal. App. 4th 1463 (2005)……………....12, 13

*Sweet v. Sheahan,* 235 F.3d 80 (2d Cir. 2000)…………………………………….…3

*Villager Pond*, *Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995)……………..…..3

*Watters v. Wachovia Bank, N.A.,* 550 U.S.--, 127 S. Ct. 1559 (2007)……………...…4

*Wells Fargo, N.A. v. Boutris*, 419 F.3d 949 (9th Cir. 2005)……………………….14

*Wells Fargo Bank of Texas*, *N.A. v. James,* 321 F. 3d 107 (2d Cir. 2005)……………14

## **STATUTES**

National Bank Act of 1864, 12 U.S.C. § 21…...….….…………………….……………..2

12 U.S.C. § 24 (Seventh)……..……………………………………………………....11

12 U.S.C. § 85……………………………………………………………....…3, 7

12 U.S.C. § 86……………………………………………………………….…3, 7

12 U.S.C. § 371……………………………………………………..…...……4, 10

12 U.S.C. § 484(a)………...…………………………………...……………..…4

12 U.S.C. § 2607(b)……………………………………………….…….………..2

New York General Business Law § 349....…………………………………………1, 2, 5

New York State Real Property Tax Law § 952……...………………………………1, 2

New York State Real Property Tax Law § 956(1)…………...………………….……17

New York State Real Property Tax Law § 957(1)……...………………….……16

New York State Real Property Tax Law § 957(4)……...………………….……17

New York State Real Property Tax Law § 959…...…………………………………..10

## RULES AND REGULATIONS:

12 C.F.R. § 7.4002(d)………………………………………………………11

12 C.F.R. § 7.4007(a)………………………………………………….……12

12 C.F.R. § 7.4007(b)………………………………………………………12

12 C.F.R. § 7.4007(c)………………………………………………………12

12 C.F.R. § 34.1(a)………………………………………………...………...11

12 C.F.R. § 34.3………………………………………………………...……...11

12 C.F.R. § 34.4…………………………...………………………………11, 12

69 Fed. Reg. 1904 (January 13, 2004)………………………...……………………4, 10

I.       **INTRODUCTION**

No federal law or statute confers upon any bank or financial institution the power to deceive, mislead, or make misrepresentations to its customers.  As such, state laws offering relief for victims of deceptive business practices cannot conflict with federal law and are not preempted by the National Bank Act of 1864, 12 U.S.C. §§ 21, *et seq.*   ("NBA") and corresponding regulations of the Office of the Comptroller of the Currency ("OCC"). Defendants Wells Fargo & Company and Wells Fargo Bank, N.A., (collectively "Wells Fargo"), however, appear to argue that the NBA and two OCC regulations allow federally chartered banks to engage in such conduct unchecked.

Plaintiffs' state law claims are based on laws of general application that do not prevent or significantly interfere with a national bank's ability to exercise its power under the NBA and OCC regulations, and thus are not subject to federal banking preemption.  In its partial motion to dismiss ("Partial Motion"), Wells Fargo erroneously asserts Plaintiffs' allegations under New York General Business Law section 349 ("Section 349") and New York State Real Property Tax Law section 952, *et seq.* ("Property Tax Claim") are preempted on grounds these laws challenge Wells Fargo's power to charge non-interest fees for services attendant to making real estate loans.  Plaintiffs' state law claims, however, challenge Wells Fargo's practice of charging a fee for a tax account it never creates, and *misrepresenting* what "tax service," if any,  is actually rendered in exchange for the charge.  Case law as well as OCC regulations concur that state law claims like Plaintiffs' fall outside the preemptive scope of the NBA because Congress did not grant Wells Fargo the power to deceive its customers.

Further, conflict preemption in banking cases is limited to statutes that specifically target banks, or that mandate or prohibit conduct such that state law is incompatible with federal law. Requiring that Wells Fargo not engage in deceptive business practices and comply with state property tax laws is not incompatible with the federal banking statutes and regulations Wells Fargo relies on to invoke preemption. In fact, the OCC regulations Wells Fargo's Motion points to specifically speak to the applicability of state law and support a

finding against preemption. Indeed, the regulations at issue expressly provide that state laws regarding taxation and torts that do not "impair, obstruct or prohibit" banking activities are not preempted.

In addition, virtually every case cited by Wells Fargo to support its preemption argument involves a state statute directly targeted at banks and specifically prohibits a federally enumerated banking power. Here, Plaintiffs' allegations challenge deceptive practices, not the right to make loans or charge fees for services. The NBA was never meant to immunize a lending institution which victimizes borrowers and then invokes "preemption" as a shield against liability.

Finally, Plaintiffs' Property Tax Claim is properly alleged and allows for a private right of action, as the statute provides a dual enforcement mechanism whereby both private individuals and the Attorney General may file a lawsuit. Wells Fargo fails to establish how a statute that provides the Attorney General *may* enforce its provisions forecloses any private right of action.

Accordingly, Wells Fargo's Motion should be denied.


## II.     STATEMENT OF FACTS

Plaintiffs' Class Action Complaint for Damages and Injunctive Relief ("Complaint") alleges that Wells Fargo's charging and collection of a "tax service fee" in connection with loans secured against interests in cooperative property violates the Real Estate Settlement Procedures Act of 1974 ("RESPA")., 12 U.S.C. § 2607(b), New York State Real Property Tax Law § 952, *et seq.* ("Property Tax Claim"), and New York State General Business Law §349, *et seq.* ("Section 349"). On November 13, 2007, Plaintiffs, as part of their purchase of 501 shares of a cooperative apartment in New York city, obtained a 30 year fixed rate cooperative loan from defendant Wells Fargo Bank, N.A. (Compl. ¶4). Inextricably, Plaintiffs were charged an $80.00 "tax service fee". (Compl. ¶¶13, 14, 16, 19, 39). Plaintiffs, however, should not have been charged a "tax service fee" because no "tax service" can be provided for an

interest in a cooperative unit, and no tax service was ever provided.   (Compl. ¶¶ 13, 14, 18, 32, 39).

### III.    STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974); *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).  Dismissal is only appropriate when it "appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir. 2000); *see also Gregory v. Daly*, 243 F.3d 687, 91 (2d Cir. 2001) ("In making this assessment [of whether to grant a motion to dismiss], we must accept as true all of the factual allegations set out in Plaintiffs' complaint, draw all inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint **liberally**." (emphasis in original; internal citations omitted) (citing *Conlee v. Gibson*, 355 U.S. 41, 45-46 (1957)). Given this heightened burden, Wells Fargo's Motion should be denied.

### IV.    PLAINTIFFS' STATE LAW CLAIMS ARE NOT PREEMPTED BY THE NATIONAL BANKING ACT

Wells Fargo exaggerates the extent of NBA preemption and does not even attempt to show how Plaintiffs' state law claims conflict with any federally enumerated banking power or OCC regulation.  Contrary to Wells Fargo's assertions, the power of Congress to regulate national banks does not fully immunize national banks from the laws of the state in which they are located. Indeed, federally chartered banks are subject to state laws of general application "to the extent such laws do not prevent or significantly interfere with a national bank's exercise of

its powers." *Watters v. Wachovia Bank, N.A.,* 550 U.S.--, 127 S. Ct. 1559, 1567 (2007).

Federal law can preempt state law under the Supremacy Clause in three ways: when (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude Congress left no room for state regulation in that field. *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 31, 116 S. Ct. 1103, 1108 (1996).

It is established the NBA does not preempt the "field" of banking, nor does it "occupy the field" of real estate lending. *Watters,* 550 U.S. at *, 127 S. Ct. at 1572; 69 Fed. Reg. 1904, 1910-11 (January 13, 2004).[1]  As such, state laws are preempted by the NBA and OCC regulations if they are either expressly preempted[2], or if they conflict with federal law—where, "compliance with other federal and state regulations is a physical impossibility," *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 133-134, 83 S. Ct. 1210, 1218 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941).

State laws do not conflict with the NBA and OCC regulations where such laws do not prevent or "significantly interfere" with a national banks' exercise of its powers. *Watters,* 550 U.S. at *, 127 St. Ct. at 1567; *see also Barnett Bank,* 517 U.S. 25 at 31, 116 S. Ct. at 1108 (recognizing the power of states to regulate national banks where "doing so does not prevent or

---

[1] In declining to preempt the field of real estate lending, the OCC stated, "[i]n describing the proposal, we invited comment on whether it would be appropriate to assert occupation of the entire field of real estate lending…we decline to adopt the suggestion of these commenters that we declare that these regulations "occupy the field" of national banks' real estate lending, other lending, and deposit-taking activities. We rely on our authority under both 12 U.S.C. 93a and 371, and to the extent that an issue arises concerning the application of a state law not specifically addressed in the final regulation, we retain the ability to address those questions through interpretation of the regulation, issuance of orders pursuant to our authority under 12 U.S.C. 371, or, if warranted by the significance of the issue, by rulemaking to amend the regulation.  69 Fed. Reg. 1904, 1910-1911 (January 13, 2004).

[2] For example, Congress has expressly preempted state laws in the areas of usury and the visitorial powers of the OCC.  *See* 12 U.S.C. §§85, 86; 12 U.S.C. §484(a).

significantly interfere with the national bank's exercise of its powers."); *Clearing House Ass'n, L.L.C. v. Cuomo,* 510 F.3d 105, 120 (2d Cir. 2007) ("national banks remain 'subject to state laws of general application in their daily business.'").

A. **Plaintiffs' State Property Tax and Section 349 Claims Are Laws of General Applicability that Do Not "Prevent or Significantly Interfere" with a National Banks' Exercise of Its Powers.**

Plaintiffs' state law claims do not prevent or significantly interfere with Wells Fargo's exercise of its powers, because Wells Fargo does not have any federally-enumerated power to deceive its customers. Plaintiffs' state law claims do not question Wells Fargo's right to make loans and charge a fee for services. Rather, such claims are based on laws of general applicability and challenge Wells Fargo's practice of charging a fee to set up a tax account it never creates, and misrepresenting to its customers that a service is provided for the so-called "tax service fee." Neither the Property Tax Claim nor Plaintiffs' Section 349 allegations encroach upon or supplement any federal statutory scheme. These state laws apply to all businesses across the board and are not designed to regulate banks. In fact, the OCC regulations at issue speak directly on the applicability of state law and actually confirm Plaintiffs' state law claims are not preempted. Additionally, compliance with the NBA and OCC regulations is not a physical impossibility. Wells Fargo may still exercise its federally-sanctioned banking powers in a proper, non-deceptive manner in compliance with both New York statutes.

1. **New York General Business Law Section 349 Prohibits All Businesses Operating in the State From Deceptive Practices and Is Not Preempted.**

New York General Business Law section 349's duty to refrain from deception falls on all businesses. Specifically, Section 349 prohibits "[d]eceptive acts or practices in the conduct of *any business, trade or commerce*." N.Y. GEN. BUS. LAW § 349 (emphasis added). To establish a claim under Section 349, a plaintiff must demonstrate, "1) the defendant's act was misleading in a material way; 2) the act was directed at consumers; and 3) the plaintiff has been

injured as a result. *Maurizio v. Goldsmith*, 230 F. 3d 518, 521 (2d Cir. 2000). Section 349 does not specifically target banks, and does not prescribe which services it can charge a fee for or how much it can charge. Section 349 only requires that Wells Fargo not deceive its customers.

Wells Fargo's Motion does not even attempt to show how applying Section 349 to its banking activities significantly burdens its exercise of real estate lending power or the right to charge non-interest fees. Of course, the reason for this is obvious: to support Wells Fargo's preemption rationale, federally enumerated powers must necessarily include the power to deceive customers, and Wells Fargo would have to demonstrate that being prohibited from doing so by Section 349 hinders the efficient exercise of its power. This interpretation of federal law is untenable.

Federal courts across the Country have rejected preemption arguments similar to the one Wells Fargo makes in the instant case, finding claims based on state consumer protection statutes challenging deceptive business practices related to federally regulated banking activities are not preempted. For example, in *Saxton v. Capital One Bank*, 392 F. Supp. 772 (S.D. Miss. 2005) Capital One Bank argued plaintiffs' claims were preempted by the Depository Institutions Deregulation and Monetary Control Act ("DIDA"). The court ruled plaintiffs' state law challenge regarding the deceptive manner in which defendants were charging interest was distinct from a preempted NBA usury claim challenging the rate of interest (even if DIDA were patterned after sections 85 and 86 of the NBA and provides a federal cause of action for the claims at issue). *Saxton*, 392 F. Supp. 2d at 782. The court held:

> [P]laintiffs challenge business practices they believe defendant designed and implemented to defraud them…With regard to "interest," plaintiffs do not challenge the legality of the rate of interest charged by defendants. Rather, they claim that various interest fees were not disclosed, were unwarranted, were based on charges that were themselves were improper, and in sum, should have never been charged at all. It is clear to the court that it is not the per se amount of late fees or other "interest" that plaintiffs challenge here but rather the allegedly improper and deceptive manner in which it was charged. Hence, plaintiffs' complaint is not construable as a [federally preempted] claim for usury.

*Id.* at 783 (citations omitted).  Here, a finding against preemption of Section 349 is even more compelling than the finding against preemption of the consumer fraud claim in *Saxton*, because usury claims are expressly preempted by the NBA.  *See* 12 U.S.C. §§ 85, 86.  All Plaintiffs' need to show in the instant matter is that the Section 349 claim does not conflict, that is, prohibit or significantly interfere, with the NBA or any OCC regulation.  Applying the rationale from *Saxton*, Plaintiffs' Section 349 claim targeting Wells Fargo's deceptive practices is not preempted.

*Great Western Resources, LLC v. Bank of Arkansas, N.A.,* No. 05-5152, 2006 WL 626375 (W.D. Ark. March 13, 2006), also speaks to a preemption issue similar to the argument raised in Wells Fargo's Motion.  The *Great Western Resources* plaintiffs challenged fees charged by a national bank.  Although plaintiffs conceded one of their causes of action was preempted by the NBA, the district court found the remaining state law claims, including violations of the generally applicable Arkansas Deceptive Trade Practices Act, were not preempted.  *Great Western Resources*, 2006 WL 626375, at *3.  Likewise, Plaintiffs' Section 349 claim is a state consumer protection law of general applicability that is not subject to preemption.  There is no challenge here of Wells Fargo's right to charge non-interest fees, but only for the deceptive manner in which customers are charged for the so-called "tax service fee."

In *Carson v. H &R Block, Inc.*, 250 F. Supp. 2d 669 (S.D. Miss. 2003), plaintiffs alleged they were solicited by defendants to participate in a program for tax refund anticipation loans and that defendants collected and charged fees while misrepresenting the true costs of the loan. *Carson*, 250 F. Supp. 2d at 670.  Plaintiffs also alleged defendants were withholding, concealing, and suppressing the fact that plaintiffs' fees and interest rates would be substantially higher than the rates that were disclosed.  *Id.*  Defendants contended Sections 85 and 86 of the NBA preempted plaintiffs' claims.  *Id.*  The district court found plaintiffs did not attack the interest rates in anything but a peripheral manner, as they did not complain of the legality of the interest rate, but rather, that plaintiffs were told one rate and the actual rate

charged was different—regardless of the rate's legality. *Id.* at 671-672. Therefore, plaintiffs' claims under state law were not preempted. Similarly, this court should find a distinction between a consumer fraud claim concerning the misrepresentation of fees, and a national banks' right to make loans and charge fees in general.[3]

As demonstrated by these cases, state consumer protection laws prohibiting deceptive conduct—like Section 349—are statutes of general applicability that do not significantly interfere with a national banks' exercise of its powers. Plaintiffs do not dispute Wells Fargo's assertion that the NBA and OCC regulations "grant Wells Fargo the power, without state interference, to charge loan-related fees in connection with the making of a loan." (Partial Motion at p.7). Wells Fargo, however, points to no authority that allows it to deceive its customers—the conduct Plaintiffs' Section 349 claim addresses. While state law cannot dictate to Wells Fargo how it can or cannot operate, it can insist that if Wells Fargo chooses to do business here, it must do so by carrying out its activities free from deception. *See Gibson v. World Savings and Loan Ass'n*, 103 Cal. App. 4th 1291, 1299 (4th Dist. 2d Div. 2002) ("the state cannot dictate to the Bank how it can or cannot operate, but it can insist that, however the Bank chooses to operate, it do so free from fraud and other deceptive business practices.").

Further, almost six years ago, the OCC recognized that national banks may be liable for

---

[3] Other decisions finding consumer fraud claims against federally chartered banks not preempted by the NBA include: *Jacobs v. ABN-AMRO Bank N.V., et al,* No. 03-CV-4125 2004 WL 869557 (E.D.N.Y. April 21, 2004) (remanding case where mortgagors' claims that bank's fax fee violated New York Real Property Law and Section 349 were not subject to complete preemption under section 24 of the NBA); *Cortazar v. Wells Fargo & Co.,* No. C 04-894-JSW, 2004 WL 1774219 (N.D. Cal. August 9, 2004) (plaintiffs challenge to the unfair and deceptive manner in which Wells Fargo induced borrowers to enter into unfavorable loans under California consumer protection laws not preempted by the NBA); *Patterson v. Regions Bank*, No. 06-CV-469-DRH, 2006 WL 3407852 (S.D. Ill. Nov. 27, 2006) (allegations of deceptive business practices under the Illinois Consumer Fraud Act that bank made misrepresentations about the interest rates that would be applied were not preempted by the NBA); *Cross County Bank v. Klussman*, No. C-01-4190-SC, 2004 WL 966289 (N.D. Cal. April 30, 2004) (granting plaintiff's motion to dismiss, in part because consumer fraud claims alleging bank misrepresented the nature and costs of its services not preempted by NBA).

violations of state consumer protection laws. In an advisory letter dated March 22, 2002, the OCC cautioned that "[a] number of state laws prohibit unfair or deceptive acts or practices, and such laws may be applicable to insured depository institutions. *See, e.g.,* Cal. Bus. Prof. Code 17200 [California's consumer protection statute] *et seq.* and 17500 *et seq.* [California's False Advertising Statute]". Office of the Comptroller of the Currency, Advisory Letter 2002-2003 (March 22, 2002), at 3, n.2. In the same advisory letter, the OCC also wrote: "The OCC is issuing guidance to assist national banks to ensure that management and staff throughout their organizations are aware of these significant risks and of the practices that could place the bank in any jeopardy of liability or other adverse consequences…generally a deceptive act or practice involves a representation or omission that is likely to mislead a reasonable consumer in some material way…[this] generally would involve acts or practices that are unscrupulous, unconscionable, or contrary to public policy, and that harm consumers." *Id.* at 1. Wells Fargo has engaged in such deceptive acts for which it is liable.

Moreover, unlike cases cited by Wells Fargo where the violation of a consumer fraud statute was preempted because it was predicated on a preempted state law claim, the Second Circuit has held that collecting fees in violation of other federal laws satisfies the deceptive element of section 349. *See Cohen v. J.P. Morgan Chase & Co., et al.*, 498 F.3d 111, 126 (2d Cir. 2007). If Plaintiffs can show Defendants' conduct violates RESPA—a federal statute Wells Fargo does not deny it is subject to—Plaintiff can use this basis alone to establish a deceptive business practice under New York law. *Id.* No conflicting state laws are implicated by Plaintiffs' Section 349 claim and as such this claim is not preempted.

At the end of the day, Section 349 is a consumer protection statute of general application which simply prohibits deceptive conduct that harms New York consumers. Section 349 does not expressly mandate specific instances where national banks are precluded from exercising the power to make loans or charge for services. Consequently, Plaintiffs' Section 349 claim is not preempted and Wells Fargo's Partial Motion should be denied.

### 2. Plaintiffs' Property Tax Claim Does Not Conflict With Any NBA Provision or OCC Regulation and Is Not Preempted.

Plaintiffs' allegations under section 952, *et seq.* of New York State's Real Property Tax Law have to do with remittance of state property taxes, and this law is applicable to all municipal corporations in the state. N.Y. REAL PROP. TAX § 959. This statute does not interfere with Wells Fargo's lending powers or right to charge fees for services. Indeed, there is no federal property tax, nor is there a provision in the NBA that explicitly gives national banks the power to tax real property. As such, this statute cannot conflict with any federally enumerated banking power. Again, Wells Fargo does not even attempt to explain (because it cannot explain) how or why this state property tax law that applies to all corporations in New York significantly interferes with its federally granted powers to charge fees for services and make loans. Accordingly, this claim is not preempted.

### 3. OCC Regulations Confirm Plaintiffs' State Law Claims Are Not Preempted.

Plaintiffs' state law claims are also not preempted under OCC regulations. Wells Fargo's Partial Motion refers to two OCC regulations that allegedly preempt the state laws at issue—12 C.F.R. § 7.4002 regarding bank charges, and 12 C.F.R. § 34.4 regarding real estate loans—yet both speak directly on their preemptive power and support a finding against preemption.

Specifically, in January 2004, under the authority of 12 U.S.C. § 371(a) allowing national banks make loans, the OCC published a final rule amending part 34 of its regulations to add provisions "clarifying the applicability of state law to national banks' operations. The provisions concerning preemption identify [the] types of state laws that are preempted, as well as the types of state laws that are generally not preempted, with respect to national banks' lending, deposit taking, and other operations." 69 Fed. Reg.

1904 (Jan. 13, 2004).[4]   Title 12 C.F.R. § 34.4 directly addresses preemption: "state laws that *obstruct, impair, or condition* a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. " 12 C.F.R. § 34.4(a) (italics added).  Further,  12 C.F.R. § 34.4(b) provides that state laws on <u>torts</u> and <u>taxation</u> are <u>not</u> inconsistent with the real estate lending powers of national banks "to the extent they only incidentally affect the exercise of national banks' real estate lending powers."  12 C.F.R. § 34.4(b).

In addition, 12 C.F.R. § 7.4002[5] authorizes national banks to charge its customers non-interest charges and fees, and also expressly addresses preemption: "[t]he OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to *limit or prohibit* charges and fees described in this section."    12 C.F.R. § 7.4002(d) (italics added).

Plaintiffs seek to enforce a state property tax law and a general proscription of deceptive business practices.  Even though these state statutes tangentially affect the lending business and would prohibit Wells Fargo from lying about fees—just as they would affect any business—they are general property tax and commercial laws that only incidentally affect lending operations and do not "limit or prohibit" Wells Fargo from exercising its right to set bank charges and make loans.

Further, because section 34.4(b) explicitly states that state tort and taxation laws are not preempted so long as they only incidentally affect banking, there can be no preemption under this regulation. The core of Plaintiffs' Section 349 claim (a tort) is that Wells Fargo

---

[4] Title 12 C.F.R.  part 34 sets forth standards for real estate-related lending and associated activities by national banks (12 C.F.R.  § 34.1(a)), title 12 C.F.R.  § 34.3 contains the general rule authorizing national banks' real estate lending activities, and  title 12 C.F.R. § 34.4 addresses preemption.

[5] 12 C.F.R. 7.4002 was enacted by the OCC pursuant to section 24 (Seventh) of the NBA, which bestows on national banks the authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh).

misrepresented that it provided a "tax service" for the "tax service fee" charged, while the Property Tax Claim addresses the remittance of New York state property taxes (a state taxation law). Neither Section 349 or the Property Tax Claim require Wells Fargo service or process loans, include specific content in its disclosures, or handle repayment of loans in any particular manner—requirements that would be preempted. *See* 12 C.F.R. § 34.4(a). Instead, these laws require Wells Fargo to abide by state property tax rules and refrain from deceiving its customers. As explained above, the issue is not whether or when Wells Fargo is permitted to make loans or charge fees for services, but whether Wells Fargo misrepresented to customers that it would provide a "tax service" in exchange for the fee it charges. Wells Fargo has not articulated any way that enforcing state laws prohibiting deception and remittance of certain property taxes "obstruct, impair or condition" its ability to engage in real estate lending any more than those laws impair the operation of any business. The effect of Plaintiffs' case, if any, on Wells Fargo's ability to exercise its power under the NBA and OCC regulations, is, at most, incidental, and does not implicate preemption principles. As neither New York law is designed to regulate real estate lending, nor has Wells Fargo shown (or even bothered to explain) how these state laws have any substantial effect on lending, Plaintiffs' preemption analysis is wholly consistent with the OCC regulations at issue.

In 2005, a California court rejected Wells Fargo's attempt to make a preemption argument like the one it makes here. In *Smith v. Wells Fargo Bank*, *N.A.*, 135 Cal. App. 4th 1463 (2005), the court found, "[c]ontrary to [Wells Fargo's] assertion, 12 [C.F.R. section] 7.4007[6] does not preempt a UCL cause of action based on the predicate act of a systematic

---

[6] 12 C.F.R. § 7.4007 authorizes national banks to "receive deposits". 12 C.F.R. § 7.4007(a). This section contains the same preemption clause as section 7.4002, stating "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized deposit-taking powers are not applicable to national banks" and "State laws on the following subjects are not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' deposit-taking powers…(2) Torts…(7) Taxation." 12 C.F.R. § 7.4007(b), (c).

breach of its contractual disclosure obligations. In fact, 12 [C.F.R. section] 7.4007(c) expressly recognizes that state's contract laws are not preempted 'to the extent that they only incidentally affect the exercise of national banks' deposit-taking powers… .'". *Smith*, 135 Cal. App. 4th at 1484. The *Smith* court went on to cite another holding finding, "the duties to comply with contracts and the laws governing them and to refrain form misrepresentation, together with the more general provisions of the UCL, are principles of general application. They are not designed to regulate lending and do not have a disproportionate or otherwise substantial effect on lending. To the contrary, they are part of the legal infrastructure that undergrid all contractual and commercial transactions. Therefore, *their effect is incidental and they are not preempted*." *Id.* (quoting *Gibson v. World Sav. & Loan Ass'n*, 103 Cal. App. 4th 1291, 1302 (2002) (italics added).

This Court should reject Wells Fargo's preemption argument on the same grounds as *Smith*, because the OCC regulations Wells Fargo points to in support of preemption actually confirm federal banking preemption does not apply to Plaintiffs' claims.

**B.  Plaintiffs' State Law Statutes Differ from the Statutes Preempted in Wells Fargo's Case Law, Because They Do Not Apply Specifically to Banks Nor Do they Prohibit Banks from Exercising Federally-Granted Banking Power.**

Nearly every case Wells Fargo cites in support of finding preemption is fundamentally distinguishable because it involves state law claims either brought under or based on a substantive state law rule specifically directed at banking or lending institutions.

In *Bank of America v. City and County of San Francisco,* 309 F.3d 551 (9th Cir. 2002), the court held federal regulations allowing banks to collect non-interest charges preempted a local law governing the ATM fees a bank could charge. In *Montgomery v. Bank of America,* 515 F. Supp 2d 1106 (C.D. Cal. 2007), the court held, (1) that 12 C.F.R. § 7.4002, the federal regulation which gives banks discretion to set their non-interest fees, preempted plaintiffs' consumer fraud claim that *fees were too high* and, (2) that 12 C.F.R. § 7.4007, the federal regulation allowing banks to exercise deposit-taking powers without *state law disclosure*

*requirements*, preempted plaintiffs' consumer fraud claim based on a failure to disclose.

In *Barnett Bank*, the "question [before the court] was whether a federal statute that permits national banks to sell insurance in small towns preempts a state statute that forbids them to do so." *Barnett Bank,* 517 U.S. at 27. In *Wells Fargo, N.A. v. Boutris*, 419 F.3d 949, 954-55 (9th Cir. 2005), the state statute at issue was preempted because it specifically applied to banks and the court found federal law preempts state laws that apply *only to banks*, and prohibit or mandate specific actions. In *Davis v. Elmira Sav. Bank,* 161 U.S. 275, 16 S. Ct. 502 (1896), a New York state law imposing duties and guidelines on insolvent banks was found to be in direct conflict with, and thus preempted by, an NBA regulation controlling the duties and conduct of insolvent national banks.

Further, the court in *Wells Fargo Bank of Texas*, *N.A. v. James,* 321 F. 3d 107 (2d Cir. 2005), found a Texas statute prohibiting all banks in Texas from charging a check cashing fee was preempted because it conflicted with national banks' power to charge a fee for this service. Similarly, a Georgia law prohibiting check cashing fees for non-account holders was preempted by the NBA in *Bank of America, N.A. v. Sorrell*, 248 F. Supp. 1196 (N.D. Ga. 2002).

Unlike *City and County of San Francisco, Montgomery, Barnett Bank, Boutris*, *Wells Fargo Bank of Texas, N.A., Sorrell* and *Davis,* Section 349 and the Property Tax Claim apply to all businesses in New York and do not prohibit or mandate any specific conduct by banks, nor is there any direct conflict with an enumerated banking power. Indeed, in Wells Fargo's cases compliance with the subject federal and state laws at the same time would have been "a physical impossibility." Moreover, in the above cases concerning the right to charge fees for services, there were no allegations that the service fees at issue were misrepresented or deceptive (i.e., checks were being cashed in exchange for the check cashing fee in *Wells Fargo Bank of Texas, N.A* and *Sorrell*; customers were using the ATMs and being charged for doing so in *City and County of San Francisco*; and insurance was being sold to customers in *Barnett Bank*). Here, Plaintiffs' state law claims challenge Wells Fargo's practice of deceiving its customers by charging a fee for a tax service that is false, improper and misleading, and

14

compliance with both New York statutes and the NBA at the same time is certainly possible. Plaintiffs are not imposing a state statute, targeted only at banks, that prevents or significantly interferes with Wells Fargo's exercise of its powers, because national banks are not authorized to violate state property tax laws and deceive their customers.

Wells Fargo cites only one case—*Martinez v. Wells Fargo Bank*, *N.A.*, No. C-06-03327-RMW, 2007 WL 2213216 (N.D. Cal. July 31, 2007)—supporting its argument that a consumer protection statute not based on laws directed at banking is subject to preemption.  The *Martinez* court held that California consumer protection claims alleging it was an unfair practice to charge more than the actual cost of certain underwriting fees were preempted. *Id.* at *8.  First, Wells Fargo mischaracterizes the holding in *Martinez*.  The court did not hold, as Wells Fargo asserts, that a "California general statute aimed at preventing fraudulent and deceptive business practices" was *per se* preempted.  (Partial Motion, p. 6).   Rather, the *Martinez* court held that because plaintiffs' allegations centered on Wells Fargo's *discretion* in the *amount* it was charging for underwriting fees, the California Unfair Competition Law ("UCL") was preempted.

In fact, the court maintained the bedrock principle that "states may regulate national banks where 'doing so does not prevent or significantly interfere with the national bank's exercise of its powers.'" *Id.* at  3 (quoting *Barnett*, 517 U.S. 25, 33 (1996)).  Therefore, the application of the UCL to Wells Fargo's authority to charge certain underwriting fees (albeit excessive fees) was preempted because it significantly interfered with Wells Fargo's exercise of its powers under the NBA and OCC Regulations.  The court noted:

> The court ***again reiterates*** that in so holding, the court does not conclude that § 17200 claims are per se preempted by the NBA and regulations thereunder. Rather, to the extent a § 17200 claim seeks to contest the exercise of a national bank's enumerated or incidental authority, such a claim significantly interferes with the federally-conferred authority of the bank and the exclusive regulatory authority of the OCC.

*Id*. at 5, n.6 (emphasis added).

Second, unlike *Martinez*, Plaintiffs in the instant matter do not allege (nor attempt to allege) that Wells Fargo has used poor discretion in setting the prices for services or is overcharging for services. Plaintiffs' state law claims only question Wells Fargo's intentional deception in misrepresenting that it provides a "tax service" for the "tax service fee." Further, at least one federal court has refused to follow the ruling in *Martinez*, finding the court's rationale flawed and stating "the logic if the decision is not entirely clear" because "[a]lthough the court explains it does not conclude that § 17200 claims are per se preempted [citations] a literal reading of the court's opinion inevitably produces that result". *Jefferson v. Chase Home Finance, et al.*, No. C06-6510, 2007 WL 4374410, *14 (N.D. Cal. December 14, 2007). This Court should also decline to follow the confused *Martinez* court.

The cases cited by Wells Fargo do not support that Plaintiffs' state law claims are preempted. Section 349 and the Property Tax Claim are not directed at banks and do not prohibit or mandate any action in conflict with a federally enumerated power. As such, the state law claims do not prevent or significantly interfere with Wells Fargo's lending power or right to charge fees, and are thus not preempted.

## V.    PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION UNDER NEW YORK'S REAL PROPERTY TAX LAW

Plaintiffs have standing to bring an action under the New York Real Property Tax law. Wells Fargo's bare assertion that the Attorney General has "been given sole authority to file a lawsuit concerning an alleged 953(4) violation," is incorrect given the plain language of the statute. (Partial Motion, p. 10). Section 957 provides, "[t]he attorney general *may enforce* the provisions of section nine-hundred fifty-three." N.Y. REAL PROP. TAX § 957(1) (emphasis added). The term "may" does not connote "sole authority" as Wells Fargo proclaims. (Partial Motion, p. 10). Nor does the legislature's grant of permission to the attorney general to enforce section 953 lead to the "most logical conclusion" that the legislature deliberately chose "not to provide a private cause

of action." (Partial Motion, p. 11).   Instead, all section 957(1) does is provide for enforcement by the Attorney General in addition to any private right of action under the statute.

Indeed, the "logical conclusion" is if the legislature intended to vest sole enforcement authority in the attorney general, it would have chosen a different term than the open-ended, "may enforce."  Further, if the intent of the legislature was to entirely foreclose any private right of action, it would not have included section 957(4), which states, "*[n]othing* in this section shall preclude a mortgagor from obtaining *any* relief or remedy at law or in equity to which such mortgagor may be entitled, *including* those remedies and relief provided for in subdivision one of section nine hundred fifty-six of this title."  N.Y. REAL PROP. TAX § 957(4) (emphasis added).  Remarkably, section 956(1) reads, "a mortgagor whose taxes are to be paid by means of a real property tax escrow account *pursuant to this title may bring an action* against the mortgage investing institution maintaining such account…"  *Id.* at § 956(1) (emphasis added).

While Wells Fargo correctly notes that courts should be "chary" in interpreting a statute's construction to imply a private right of action, the above-quoted language indicates there is no need for the Court to imply a private cause of action in this instance, because the statute expressly provides for one.[7]  Read together, sections 956(1) and 957(1) & (4) demonstrate the legislative grant of enforcement authority to the attorney general was not meant to bar or eliminate a private cause of action under the statute.

---

[7] In the event that the Court inquires as to whether an implied private right of action exists under the New York Real Property Tax law, the Court is obliged to defer to the New York Supreme Court – Appellate Division's holding in *Negrin v. Norwest Mortgage, Inc.,* 263 A.D. 39, 31 N.Y.S.2d 246 (1999), that a private right of action is implied in a similar provision of the Real Property law.  ("[A] federal court is generally obliged to follow the decisions of a state's intermediate courts absent convincing evidence that the New York Court of Appeals would decide differently." *Jaramillo v. Weyerhaeuser Co.,* 2007 WL 194011 (S.D.N.Y. January 24, 2007), citing *Gonzalez v. Rutherford Corp.,* 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (internal citations and quotations omitted).

As such, the statute provides a dual enforcement mechanism whereby both private individuals and the attorney general may bring an action under the Act. See e.g. *Gerel Corp. v. Prime Eastside Holdings, LLC*, 12 A.D.3d 86, 93, 783 N.Y.S.2d 355, 360 (N.Y. App. Div. 2004) ("that the Attorney General has standing to institute an action under General Obligations Law § 7-105 for a violation does not, in and of itself, defeat the existence of a private right of action.); see also *Goshen v Mutual Life Ins. Co. of N.Y.,* 98 N.Y.2d 314 (2002) (noting the right of the Attorney General to enforce a statute and the right of an individual aggrieved to bring a private action have been found to coexist).

Plaintiffs may bring a private action under the New York State Real Property Tax Law and Wells Fargo's Partial Motion on these grounds should be denied.

## VI.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request the Court deny Wells Fargo's Partial Motion in its entirety.


DATED: March 25, 2008                           Respectfully submitted,

                                                **ATTORNEYS FOR PLAINTIFFS**

                                                By:_____/s/ Gillian Wade_____
                                                Stuart E. Nahas, Esq.
                                                ZRAICH, NAHAS & RICH
                                                303 Fifth Avenue
                                                New York, New York 10016
                                                (212) 686-0855

                                                Wayne S. Kreger, Esq.
                                                Gillian L. Wade, Esq.
                                                MILSTEIN, ADELMAN & KREGER, LLP
                                                2800 Donald Douglas Loop North
                                                Santa Monica California 90405
                                                (310) 396-9600