IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANDREW WILLIAM SMITH & LISA VELTEN-SMITH,** **On Behalf of Themselves and All Others Similarly Situated,**<br><br>            Plaintiffs,<br><br>      v.<br><br>**WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A. And Does 1 through 20,**<br><br>            Defendants. | Civil Action No. 1:08 cv-00564 (LAK) |

## DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS

WELLS FARGO & COMPANY and
WELLS FARGO BANK, N.A.

Brian D. Hail (BH – 1857)
GOODWIN PROCTER, LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800 (telephone)
bhail@goodwinprocter.com

Thomas M. Hefferon (*pro hac vice*)
Marva R. Deskins (not admitted *pro hac vice*)
GOODWIN PROCTER, LLP
901 New York Avenue, NW
Washington, D.C. 20001
(202) 346-4000 (telephone)
thefferon@goodwinprocter.com

LIBW/1673385.4

## INTRODUCTION

Plaintiffs' Opposition provides no basis for permitting their state-law based attempt to limit the fees that a national bank can charge. The Smiths' claims under New York General Business Law § 349 ("GBL § 349") and New York Real Property Tax Law § 952 *et. seq.* ("Escrow Statute") are a clear attempt to regulate Wells Fargo's right to make decisions with regard to the "terms of credit" it offers and the imposition of "non-interest related fees" it can charge. As demonstrated in Wells Fargo's initial brief, the National Bank Act and its implementing OCC regulations leave for federal law the question of whether and how a national bank can impose a charge like the "tax service fee."

The caselaw and arguments the Smiths offer to the contrary fail to address the primary regulation that requires preemption – 12 C.F.R. § 7.4002. Under that regulation, Wells Fargo recently prevailed in a motion similar to this one concerning the bank's right to charge a tax service fee. See *Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 2213216 (N.D. Cal. July 31, 2007). The Smiths' other arguments are not persuasive and do not support a different result here. The Smiths also do not dispute that the alternative grounds cited for preemption, 12 C.F.R. § 34.4, is also implicated. While they do contend that exceptions to the regulation for laws that are only incidental apply to their claims, they cannot seriously dispute that a law dictating to a bank the fees it can charge for loans is merely "incidental" to its business.

The Smiths also make a failed effort to refute the absence of a private right of action for their claims under the Escrow Statute by piecing together provisions that, read separately or apart, cannot contradict the clear language and intent of the statute. Only the Attorney General can enforce the part of the Escrow Statute they invoke, and the only private right of action the

1

Statute provides to consumers such as the Smiths concerns a part of the Statute under which they do not assert a claim.

## ARGUMENT

### I. THE STATE LAW CLAIMS ARE PREEMPTED.

In its opening brief, Wells Fargo established that the Smiths' state law claims are preempted on two separate grounds under the National Bank Act, 12 U.S.C. § 21 *et seq.*, which statute grants Wells Fargo all powers "incidental" to the business of making mortgage loans free of state interference. (Op. Mem. at 5). The first, 12 C.F.R. § 7.4002 ("Section 7.4002"), explicitly authorizes national banks to impose and collect "non-interest fees" in their discretion. *Id.*, at 8. The second, 12 C.F.R. § 34.4 ("Section 34.4"), allows national banks to set the "terms of credit," and prohibits state law limitations on that power. *Id.*

In their Opposition, the Smiths cleverly try to change the subject by lumping these grounds together, hiding Section 7.4002 and arguing their barred suit falls within one the exceptions in Section 34.4. *See* Pls. Opp. at 10-12. As explained further in subsection C, below, none of the preemption exceptions apply to the Smiths' claims. But even if the exception is pertinent, the Smiths have proffered no argument at all against application of Section 7.4002.

#### A. Section 7.4002 Bars Both Claims.

Section 7.4002 plainly preempts both state law claims. Fundamentally, the Smiths' contention in this case is that Wells Fargo may not charge a "tax service fee" on cooperative apartment loans because such fee is allegedly assessed for no services. *See* Compl. ¶¶ 15-19. Their claims run afoul of Section 7.4002, which specifically provides that a national bank "may charge its customers non-interest charges and fees," (12 C.F.R. § 7.4002(a)), which are set and imposed "in its discretion." *Id.*, § 7.4002(b)(2). Therefore any state law claims that challenge a

2

national bank's right to impose a non-interest fee, such as the tax service fee at issue here, is preempted.

As discussed in our opening brief, in *Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 2213216, at *5 (N.D. Cal. July 31, 2007), a federal court in California decided less than a year ago that the charging of tax service fees cannot be challenged under a California deceptive business acts statute similar to the statute invoked in Count II here, GBL § 349. The district court reasoned that because of the plain command of Section 7.4002, the bank's customers simply cannot "rely upon state law to contest the fairness of Wells' decision-making and setting of charges that [were] clearly authorized by the NBA and within the purview of the OCC's exclusive regulation." *Martinez*, 2007 WL 2213216, at *5.

The Smiths attempt to discredit the holding in *Martinez* by noting that one court, *Jefferson v. Chase Home Finance*, 2007 WL 4374410, at *14 (N.D. Cal. Dec. 14, 2007), has disagreed with its holding. Pls. Opp. at 16. This is a misstatement of the *Jefferson* court's comments, which only questioned an earlier, non-final opinion in *Martinez*. Moreover, the discussion in *Jefferson* does not address Section 7.4002, which was the primary basis for the *Martinez* court's final preemption ruling. The Smiths' reliance on *Jefferson* is ultimately misplaced in any event because the Ninth Circuit subsequently affirmed a district court opinion that the Jefferson court had rejected as not accurately stating the law in this area. *See Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1006-07 (9th Cir. 2008). *Jefferson* does not undermine the compelling force of the *Martinez* ruling as to the very type of non-interest charges, tax service fees, imposed by the very same bank – Wells Fargo.

The Smiths have little more to say about Section 7.4002. They point out that OCC provides that it will apply preemption rules to determine whether a state law runs afoul of this

3

regulation (Pls. Opp. at 11), but that is merely a statement of the obvious and does not avoid the plain force of Section 7.4002. On the strength of this regulation alone, the two state law claims are preempted.

### B. Section 34.4, And The National Bank Act Generally, Are Independent Grounds For Granting The Motion.

As discussed previously, apart from Section 7.4002, the National Bank Act and its general implementing regulation, Section 34.4, provide a second and separate grounds for a finding of preemption. The regulation in particular explicitly provides that no state may regulate the "terms of credit," which quite obviously prevents the State of New York from dictating to Wells Fargo what fees it can and cannot charge in making a loan.

As a windup to their defense of the suit in the face of the regulatory bar, the Smiths include a lengthy but general recitation of well-worn preemption principles. Notably, they do not repeat the indisputable principle that in the case of banking regulation, the presumption in this Court must be that state law is preempted. Pls. Opp. at 3-5. In any event, the principles do not answer the question posed by this motion which concerns well-established OCC regulations cited by Wells Fargo.

The Smiths' primary argument appears to be that the two statutes they cite are laws "of general applicability" and so therefore are somehow exempt from preemption rules. Pls. Opp. at 5-6, 9. The distinction the Smiths attempt to make and then take advantage of is false one. The OCC regulations prohibit state interference based on *what* the law effects not on *who* the law effects. So, for example, Section 34.4 prevents state interference through laws affecting advertising and disclosures, and it makes no difference whether the advertising rules are ones addressed to banks only, or to consumer businesses only, or to businesses only, or to the world. Indeed, that Section 34.4 has exceptions designed to carve out certain general state laws, which

4

Wells Fargo shows below are not implicated in this suit, only demonstrates Wells Fargo's point that unless covered by an exception it makes no difference whether the law invoked is a law of "general applicability" or not.

The Smiths then baldly assert that "[f]ederal courts across the Country have rejected preemption arguments similar to" Wells Fargo's, but the cases relied on concern litigants who have argued that a plaintiff's state law claims are preempted by the National Bank Act's treatment of usury regulation – but this is not the type of preemption Wells Fargo espouses here. *See* Pls. Opp. at 6-8. These cases apply a heightened standard that has no bearing on the analysis this Court must undertake in this case.

Notably, in discussing Section 34.4, the Smiths do not deny that the "tax service fee" is a term of credit as to which state law regulation is preempted. *Compare* Op. Mem. at 8 *with* Pls. Opp. at 12. *See* 12 C.F.R. §34.4; *Austin v. Provident Bank*, 2005 WL 1785285, at *5 (N.D. Miss. July 26, 2005) (providing that states may not regulate "terms of credit" which includes fees and expenses charged in connection with a real estate loan). Putting aside for a moment their contention that this suit falls within a Section 34.4 exception (as that point is discussed below), the Smiths attempt to avoid Section 34.4 by characterizing their claims as centering around "disclosure," and averring that preemption of their claims would give Wells Fargo cause to "deceive its customers." Pls. Opp. at 1.

This mischaracterizes the claim. Quite obviously, the Smiths' principal concern is to get a refund of the fee – relief that flows from the assertion that Wells Fargo was prohibited from charging the fee, and not that it failed to properly disclose the fee. However, it is no more than a legal slight of hand – which this Court should not indulge – to attempt to turn the allegation that the fee was illegal because it was charged for nothing (a preempted claim) into a contention that

5

the fee was improperly disclosed because Wells Fargo did not reveal that it allegedly was charged for nothing.

More substantively, attempts, like those of the Smiths, to avoid preemption by claiming that a credit term or fee is improperly disclosed were anticipated by the OCC and foreclosed by the agency. Section 34.4(a) itself provides that a national bank may make real estate loans "without regard to state law limitations concerning…[d]isclosure and advertising." Hence the Smiths' claims are preempted on either ground.[1]

Having no applicable case law to support their claims, the Smiths then attempt to argue that their GBL § 349 claim withstands preemption because Wells Fargo's alleged conduct violates the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"). Citing *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007), they contend that establishing proof that a party has collected fees in violation of other federal laws satisfies the deceptive element of GBL § 349, therefore preventing dismissal of a GBL § 349 claim that is otherwise preempted. Pls. Opp. at 9.

The argument fails on two levels. First, there is no recognized exception to preemption that allows a state law cause of action predicated upon conduct that is allegedly illegal under federal law. Second, plaintiffs have completely mischaracterized the Second Circuit's holding in

---

[1] Recent caselaw only enforces the point. In a 2008 decision not discussed in Wells Fargo's initial brief, the Ninth Circuit in *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008), found that a consumer's claims under California's analog to GBL § 349 was preempted by the NBA because the power granted to loan money on personal security under 12 U.S.C. § 24 (Seventh) and corresponding OCC regulation did not allow the state to regulate how those loans were made and, specifically, what disclosures were given. *Id*.

*Cohen*, which merely held that as a matter of law, disclosure alone cannot preclude a deceptive practice claim under GBL § 349,[2] but said nothing, one way or the other, about preemption. *Id*.

      C.    **The Smiths' State Law Claims Do Not Fall Within Any Section 34.4 Exception.**

The Smiths argue that GBL § 349 and the Escrow Statute are tort and taxation laws, and therefore fall within the enumerated exceptions in 12 C.F.R. § 34.4(b). Wells Fargo initially disputes the contention – which the Smiths do not support – that GBL § 349 is a tort law and that the Escrow Statute is a taxation law. The former is a statutory creation, not found in the common law – and a law this Court can be sure the Smiths will later in this case contend is not constrained by "tort" rules of liability, such as proof of intent. And while the Escrow Statute deals with payment of taxes, it is not a law that addresses what the exception is apparently addressed to – historical state control over the levying of taxes and their collection.

In any event, the exceptions for state laws that only "incidentally affect" national banks are not triggered. As recently recognized by the Ninth Circuit, if the challenged activity is among those listed in the first part of Section 34.4, the exceptions do not apply even if – as the Smiths try to argue – the law might be said to only "incidentally affect" the operations of the bank. *See Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1006-07 (9th Cir. 2008) (construing regulatory scheme identical in structure for federal savings and loans). As the Smiths' claims under GBL § 349 and the Escrow Statute directly challenge the "terms of credit" and the imposition of "non-interest charges and fees," activities listed in Sections 34.4 and

---

[2]     Wells Fargo also disagrees with plaintiffs' reading of *Cohen*, which does not clearly establish that a violation of a federal law is automatically a GBL § 349 violation. Indeed, the Second Circuit recognized in *Conboy v. AT&T Corp*, 241 F.3d 242, 258 (2d Cir. 2001) that a claim under GBL § 349 cannot be made out solely on the back of another statutory violation.

7.4002 that Wells Fargo is permitted to engage in free of state regulation, the exceptions are not reached.

The Smiths cite *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (Cal. Ct. App. 2005), as support for their contention that their claims only incidentally affect Wells Fargo's real estate lending powers.  Pl. Opp. at 12-13.  However, the language cited from the opinion applies to contract claims, and there is no contract claim here.  More importantly, the Smiths' characterization of the case ignores the reasoning behind the holding.  The *Smith* court declined to preempt the plaintiffs' claims there because the cause of action merely sought to enforce federal regulations, and did not "involve or seek to impose any *state* law *limitation* or other state requirement."  *Id*. at 1482.  The Smiths' claims in this case, under GBL § 349 and the Escrow Statute, are fundamentally different for they do seek to impose unique state law limitations.  So, *Smith* is inapplicable.

The Smiths ultimately offer no logical reason why their suit more than incidentally affects Wells Fargo.  If the state law claims are allowed to proceed, and accepted by the Court, Wells Fargo will not be permitted to charge and collect a loan fee that it (according to the complaint) otherwise charges and collects on a routine basis.  The suit seeks to dictate the fees Wells Fargo makes.  Plaintiffs may, cavalierly, believe that to be incidental, but Congress has long ago decide that Wells Fargo may exercise all "incidental" powers to making loans – powers that naturally include fees that may be charged.  12 U.S.C § 24 (Seventh).  The exceptions the Smiths cite are simply not applicable in a suit where the state law would dictate a bank's right to charge for the loans it makes.

**II.     THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE ESCROW STATUTE**.

As an alternate ground for dismissal of the Second Cause of Action, Wells Fargo pointed out that there is no private right of action granted to mortgagors to enforce the portion of the Escrow Statute, Section 953, that the Smiths sue about. Op. Mem. at 10-12. Wells Fargo further argued that no right of action should be expected because the Legislature had exercised its discretion to grant rights of action to mortgagors in only some circumstances and to permit, with respect to the Section 953, enforcement by the Attorney General but not by individuals. *Id*.

As an initial matter, the Smiths do not dispute that they are not granted an express cause of action to enforce Section 953. The Smiths argue for an implied private to sue because the Escrow Statute provides only that the Attorney General "may" enforce Section 953. Pls. Opp. at 16. They place too much reliance on the sometimes-permissive way in which the term "may" can be used. See *Treherne-Thomas v. Treherne-Thomas*, 46 N.Y.S.2d 679, 681 (N.Y. App. Div. 1944) (construing "may" in statute to mean "must"). The natural reading of this part of the Escrow Statute is that the Attorney General has the choice in deciding whether it wants to enforce the statute – it "may" sue – but not that others "may" sue also. As noted in our earlier brief, disappointed mortgagors have enforcement rights only in one instance ("if payments for the real property taxes have not been made"*).* The Smiths do not allege such a violation here.

The Smiths' observation that "the statute provides a dual enforcement mechanism whereby both private individuals and the attorney general may bring an action" is true enough, but fatal to their argument, because the Legislature has already defined the contours of the remedies. Pls. Opp. at 18. Unlike the cases the Smiths cite, we have here a detailed statute where the Legislature has divvied up the rights which the Attorney General enforces and those private parties enforce. *Compare Goshen v. Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314, 324 (N.Y. 2002) (General Business Law § 349(h));. *Gerel Corp. v. Prime Eastside*

9

*Holdings, LLC*, 783 N.Y.S.2d 355, 360 (N.Y. App. Div. 2004).[3] The Smiths provide no affirmative reason why this Court should imply concurrent powers with the Attorney General to enforce provisions of the Escrow Statute when the Legislature has made an express grant of enforcement power only to the officer.

## CONCLUSION

For all the foregoing reasons, and for those previously stated, the Smiths' Second and Third Causes of Action, under New York State Real Property Tax Law § 952 *et seq*. and New York State General Business Law § 349 *et seq*., should be dismissed with prejudice.

Dated:  April 1, 2008

Respectfully submitted,

WELLS FARGO & COMPANY and
WELLS FARGO BANK, N.A.

By their attorneys,

/s/ Brian D. Hail
Brian D. Hail (BH – 1857)
GOODWIN PROCTER, LLP
599 Lexington Avenue,
New York, NY 10022
(212) 813-8800 (telephone)
(212) 355-3333(facsimile)
bhail@goodwinprocter.com

---

[3]  When analyzing whether the Smiths have an implied right of action, this Court is not "obliged" to defer to the holding in *Negrin v. Norwest Mortgage, Inc.*, 263 A.D.2d 39, 700 N.Y.S.2d 184 (N.Y. App. Div. 1999). *Negrin* involves an action under New York Property Tax Law § 274-a. Since the Smiths here bring suit under a different regulatory scheme, this Court "should not slavishly follow lower or even upper court decisions but ought to consider all the data the highest court of the state would use." *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 851 (2d Cir. 1967) (per curiam).

Thomas M. Hefferon (*pro hac vice*)
Marva R. Deskins (not admitted *pro hac vice*)
GOODWIN PROCTER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 346-4000 (telephone)
(202) 344-4444 (facsimile)
thefferon@goodwinprocter.com
mdeskins@goodwinprocter.com

### **CERTIFICATE OF SERVICE**

    I, Brian D. Hail, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 1, 2008.

                                                             /s/ Brian D. Hail